**MELVILLE CONFECTIONS, INC.,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

No. 14252.

United States Court of Appeals
Seventh Circuit.

Jan. 29, 1964.

Rehearing Denied March 3, 1964.

Frederick W. Turner, Jr., Murray B. Woolley, Chicago, Ill., for Melville Confections, Inc.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Solomon I. Hirsh, Attorney, N. L.R.B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Harold B. Shore, Attorney, N.L.R.B., Washington, D. C., for respondent.

Before SCHNACKENBERG, KNOCH and CASTLE, Circuit Judges.

CASTLE, Circuit Judge.

This case is before the Court on the petition of Melville Confections, Inc.[1] to review and set aside an order of the National Labor Relations Board issued against the company, and upon the Board's cross-petition for the enforcement of that order. The Board's decision

---

1. Hereinafter referred to as "company".

and order are reported at 142 N.L.R.B. No. 144.

The Board found that the company violated Section 8(a) (1) of the Act[2] by maintaining and continuing to maintain a profit-sharing plan for its employees which required as a condition precedent to participation in the plan and its benefits that the employee not be represented by a labor organization for the purposes of collective bargaining. The Board's order requires the company to cease and desist from conditioning participation in any profit-sharing plan to employees who are not represented by a labor organization for collective bargaining purposes and to cease and desist from interfering with, restraining, or coercing its employees in any like or related manner in the exercise of their rights under Section 7 of the Act. Affirmatively, the order requires the company to amend its profit-sharing plan and to amend a reference thereto in a "Statement of Company Policies" booklet accordingly, and to post designated notices.

The complaint against the company was issued on November 9, 1962, following charges filed by the Union[3] on September 18, 1962. Previous representation elections held in 1960 and 1962 had been set aside by the Board because of pre-election statements made by the employer directing attention of the employees to the non-union status required for participation in the company's profit-sharing plan and to the company's right to discontinue the plan.

The complaint charged:

"Since on or about March 19, 1962, and continuing at all times thereafter, Respondent [the company] has interfered with, restrained and coerced its employees in the exercise of their rights guaranteed in Section 7 of the Act by maintaining and continuing to maintain a profit sharing plan for its employees which requires as a condition precedent to participation in the plan and its benefits that employees forego representation by the Union, or other labor organization, for purposes of collective bargaining."

The company contends that the Board's finding of a Section 8(a) (1) violation is not supported by substantial evidence on the record considered as a whole—the applicable test on review under the guiding principles furnished by Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. The company urges that the plan itself does not constitute a violation of Section 8(a) (1) and that the record reveals no proof of any act by the company within the period prescribed by Section 10(b) of the Act[4] which evinces either union animus or intention on the company's part to interfere with, restrain or coerce any employee in the exercise of a Section 7 right. The company claims that the Board relied upon events (acts and conduct of the company upon which the orders setting aside the previous elections were based) occurring more than six months prior to the filing of the instant charge in making the findings and reaching the conclusion it did.

The record reveals that the company established an employee profit-sharing plan June 30, 1958, effective as of July 1, 1957. From its inception the plan has restricted participation to "eligible employees" who have completed 12 months of continuous service in the company's

2. All references herein to the "Act" are to the National Labor Relations Act, as amended. 29 U.S.C.A. § 151 et seq. Section 8(a) (1) makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" them by Section 7 which includes the right of employees to form or join a labor organization and "to bargain collectively through representatives. of their own choosing".

3. Local 329, United Service Employees Union, affiliated with Building Service Employees Union, AFL-CIO.

4. Section 10(b) provides that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made * * *."

employ. An "eligible employee" is defined in the plan as "a regular full-time employee of the Company, not represented by a Union designated as the bargaining agent for the employee." The plan provides that it may be amended by the company at any time and may be terminated by the company upon 30 days notice. Upon termination the plan trust fund would be distributed pro-rata among present and former participating employees. Benefits are payable to participants upon severance, retirement, disability or death. The company is required to make certain contributions to the plan trust fund. Provision is made for voluntary contributions by participants.

A "Statement of Company Policies" booklet distributed to employees contains a reference to the profit-sharing plan in which the following paragraph is set forth in boldface type:

> "Under the terms of the plan, an individual must be a full-time employee and have had at least one year seniority prior to the start of any fiscal year, and cannot be represented by any union or other outside bargaining agent, in order to share in any benefits for that year. This plan was established voluntarily by the company and the company reserves the right to discontinue it at any time".

At the hearing on the complaint it was stipulated that the provisions applicable to employee eligibility and participation in the profit-sharing plan as originally set forth in the trust agreement and the booklet have remained unchanged since the plan's inception and are presently in effect, and that copies of the booklet have been distributed to employees beginning July, "1957" (sic) and continuing to-date.

■ It is patent that the plan excludes from participation those employees "represented by a union designated as the bargaining agent for the employee". And it is clear from the stipulation that the plan was in effect and maintained during the Section 10(b) period and that during such period the employees were advised of the continuation of the plan and its restrictions through the distribution of the booklet. We agree with the Board, and the trial examiner whose findings and conclusions the Board adopted, that under the facts and circumstances disclosed by the record no independent evidence of additional acts of the company either directly establishing animus or specific intent to abrogate employee Section 7 rights, or from which such animus or intent might reasonably be inferred, was necessary to support a finding of a Section 8(a) (1) violation.

■ The conduct of the company in continuing to maintain the provision making union representation a disqualification for eligibility to participate in its employee profit-sharing plan benefits and continuing to bring such restriction to the attention of its employees through distribution of the booklet setting forth company policy constituted a *per se* violation of Section 8(a) (1). It was employer conduct inherently destructive of rights guaranteed by Section 7. By its inherent nature it interfered with, restrained and coerced employees in the exercise of their right to be represented for collective bargaining by a labor organization. It placed a penalty on such action —a disqualification to participate in profit-sharing benefits. It carried with it its own inherent evidence of intent—it strains credulity to ascribe some other or different intent to the provision. In Radio Officers Union of Commercial Telegraphers Union, A.F.L. v. N.L.R.B., 347 U.S. 17, 45, 74 S.Ct. 323, 338, 98 L.Ed. 455, it was pointed out:

> "This recognition that specific proof of intent is unnecessary where employer conduct inherently encourages or discourages union membership is but an application of the common-law rule that a man is held to intend the foreseeable consequences of his conduct."

The rationale of Radio Officers was reaffirmed in N.L.R.B. v. Erie Resistor Corp., 373 U.S. 221, 227–228, 83 S.Ct. 1139, 10 L.Ed.2d 308. It was applied by this Court in connection with a Section

8(a) (1) violation in Time-O-Matic, Inc. v. N.L.R.B., 7 Cir., 264 F.2d 96, 99, where we stated:

> "No proof of coercive intent or effect is necessary under Section 8(a) (1) of the Act, the test being 'whether the employer engaged in conduct which, it may reasonably be said, tends to interfere with the free exercise of employee rights under the Act.' N.L.R.B. v. Illinois Tool Works, 7 Cir., 1946, 153 F.2d 811, 814."

Cases such as Quality Castings Company v. N.L.R.B., 6 Cir., 1963, 325 F.2d 36, and Pittsburg-Des Moines Steel Co. v. N.L.R.B., 9 Cir., 284 F.2d 74, relied upon by the company, are not apposite here. Here the disqualification is based solely upon the criterion of union representation. In Quality Castings and Pittsburg-Des Moines the employee groups excluded from the benefits involved were defined by other than union membership or activity criteria—the action complained of was not clearly discriminatory on its face as being openly and avowedly directed solely at employee activity specifically protected by the Act. Other valid bases could logically be ascribed for the action. In such circumstances intent and motivation become controlling factors and independent proof of motive or intent to interfere with, restrain or coerce employees in the exercise of protected activity is requisite to establish a violation. See concurring opinion of Justice Harlan in Local 357, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. N. L.R.B., 365 U.S. 667, 679–680, 81 S.Ct. 835, 6 L.Ed.2d 11.

The conduct here involved was continuous from the inception of the profit-sharing plan. It existed during the particular Section 10(b) period here applicable. We find nothing in the examiner's findings and conclusions which indicates any reliance on conduct of the company prior to the six-month 10(b) period as a basis for the current violation he found. His reference to the fact that prior company conduct had resulted in two elections being set aside was coupled with the observation that "[t]his evidence has been received only for the purpose of giving color, or bringing into clear focus, the conduct which is the gravamen of the complaint".

■■ The fact that the record does not disclose any instance where an employee was rejected for participation in the plan or deprived of benefits thereunder because of union representation is not of significance except to the extent that it may serve to indicate that the company's conduct in maintaining and publicizing the restriction on participation in the plan apparently succeeded in discouraging union representation of its employees—effectively interfered to coerce and restrain the employees from exercising their right to secure union representation. It was not necessary to await some such further or additional overt act of the company in order to abate this continuing patently unfair labor practice. Nor does the fact that the company's violation antedated the Section 10 (b) period applicable to the instant charge preclude a finding of a violation which occurred through a continuation of the proscribed conduct during and within the six-month period prior to the filing of the charge.

We are not persuaded by the contentions of the company which we have discussed and although we have considered the remaining and subsidiary arguments advanced by the company in support of its position, and the cases cited and relied upon, we are of the view that none of them merit detailed discussion. We conclude that the findings of the examiner adopted by the Board are supported by substantial evidence on the record considered as a whole and that the conclusions reached represent the application of correct legal criteria.

The petition of the company to set aside the order of the Board is denied; the order is affirmed; and the Board's cross-petition for enforcement of the order is granted and enforcement ordered.

Enforcement ordered.