**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**LOCAL 269, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, and Mercer County Division, New Jersey Chapter, National Electrical Contractors Association, Respondents.**

No. 15268.

United States Court of Appeals Third Circuit.

Argued Oct. 21, 1965.

Decided Feb. 4, 1966.

**52**

Warren Davision, National Labor Relations Board, Washington, D. C., (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Norton J. Come, Asst. Gen. Counsel, Linda R. Sher, Atty., National Labor Relations Board, on the brief), for petitioner.

Thomas L. Parsonnet, Newark, N. J. (Parsonnet & Parsonnet, Newark, N. J., on the brief), for Local 269, International Brotherhood of Electrical Workers, AFL–CIO.

James T. Owens, Newark, N. J., for Mercer County Division, New Jersey Chapter, National Electrical Contractors Assn.

Before McLAUGHLIN, FORMAN and GANEY, Circuit Judges.

GANEY, Circuit Judge.

The National Labor Relations Board has filed petitions for enforcement of its orders issued against Local 269, International Brotherhood of Electrical Workers, AFL-CIO ("Local 269") and Mercer County Division, New Jersey Chapter, National Electrical Contractors Association ("Association"). The latter, on behalf of its members who are electrical contractors in the building and construction industry, has, since October 1, 1959, entered into collective bargaining agreements with Local 269. The Board found that Local 269 had committed unfair labor practices in violation of § 8(b) (2) and (1) (A) of the National Labor Relations Act, 29 U.S.C.A. § 158(b) (2) and (1) (A), by giving unlawful preference to its own members in referring them to the Association for employment from the middle of 1960, until the end of April, 1962, and by thereafter maintaining in effect certain provisions of a collective bargaining agreement between Local 269 and the Association which had become effective on May 1, 1962, for the purpose of perpetuating the illegal preference previously accorded to members of Local 269. The Board also found that the Association had committed unfair labor practices in violation of § 8(a)(3) and (1) of the Act by giving effect to the 1962 modifications of the collective bar-

gaining agreement, knowing that they would result in a continuation of the former unlawful discriminatory practice. The Board further found that, in those circumstances, the charges were not barred by § 10(b) of the Act, and that the Regional Director had properly set aside two settlement agreements regarding the Local's conduct prior to those agreements. 149 N.L.R.B. No. 74 (January 2, 1964).

The first written collective bargaining agreement between Local 269 and the Association, effective October 1, 1959, to September 30, 1961, provided that though the members of the Association reserved the right to reject any applicant for employment, the Local shall be the exclusive source of referrals of applicants for employment. The Local maintained a register for employment applicants at its office in Trenton, New Jersey. Each applicant was placed in one of the four groups for which he qualified, as set forth in the agreement.[1] Despite the fact that the collective bargaining agreement did not so provide, in practice Local 269 would not certify that an electrician passed a journeyman's examination given by it unless he was a member.[2] Thus applicants could not qualify under the first and second priority group unless they were members of Local 269 or had passed an examination given by a local of I.B.E.W.

On or about December 20, 1960, one Arthur Hazeltine, who was not a member of Local 269 and who had not passed a journeyman's examination, filed an application for referral at the Local's place of registration in Trenton. He was not referred. On December 30, 1960, he filed a charge with the Board complaining that the Local was discriminating against him by refusing to permit him to take a journeyman's examination because he was not a member of the Local, and thereby was denying him the opportunity to qualify for a higher priority classification for referral to employment. The Regional Director issued a complaint.

On March 30, 1961, Local 269, not conceding any violation of the Act, entered into a formal settlement agreement, approved by the Regional Director, that it would not "perform, maintain or otherwise give effect to any employment agreement, arrangement, practice or understanding with the [Association] which, in an unlawful manner, conditioned employment * * * upon clearance or approval by Local 269." It further agreed that it would not require membership "as a condition of taking the journeyman examination required to qualify for priority grouping in referral." The Local paid Hazeltine $300 in lost wages.

In August of 1961, a new collective bargaining agreement was entered into by Local 269 and the Association to continue through September 1963. No change was made in the pre-existing referral procedure and priority group requirements.

---

1. The four groups were as follows:
  "GROUP I. All applicants for employment who have five or more years' experience in the trade, are residents of the geographical area constituting the normal construction labor market, have passed a journeyman's examination given by a duly constituted Local Union of the I.B.E.W. and who have been employed for a period of at least one year in the last four years under a collective bargaining agreement between the parties to this Addendum.
  "GROUP II. All applicants for employment who have four or more years' experience in the trade and who have passed a journeyman's examination given by a duly constituted Local Union of the I.B.E.W.

  "GROUP III. All applicants for employment who have two or more years' experience in the trade, are residents of the geographical area constituting the normal construction labor market and who have been employed for at least six months in the last three years in the trade under a collective bargaining agreement between the parties to this addendum.
  "GROUP IV. All applicants for employment who have worked at the trade for more than one year."

2. The agreement provided that examinations for journeyman should take place once every six months, and that the applicant shall be eligible for the examination if he has five years experience "at the trade".

Notwithstanding the settlement agreement of March 1961, Local 269 continued to give preference in referrals to applicants who were or became members of the Local. During the period of April 1961 to May 1962, applicants in the first priority group, if they were members of Local 269, were given preference in referral for employment over those who were not members even though the latter group had filed applications before the former did. In other words, no non-member applicant in a priority group was referred until all member applicants had been hired.

On October 27, 1961, one Frank Keorkle filed an unfair labor practice charge against Local 269. His complaint was that although he qualified as an applicant under the first priority group, he was not referred for employment, and others who applied later were referred because they were members. Keorkle had passed a journeyman's examination given by another local of I.B.E.W. and qualified for Group I priority.

Effective May 1, 1962, Local 269 and the Association modified the priority group qualifications. A new group was inserted between the old first and second, making five in all, and the old Groups I and II were modified. Group I requires that applicants have five years' experience in the trade, be a resident of the geographical area constituting the normal construction labor market, have passed a journeyman's examination *given by Local 269,* and have been employed for a period of at least five years under a collective bargaining agreement between the parties to the agreement. Group II is the same as Group I except that it requires that the applicant have passed a journeyman's examination given by any local of I.B.E.W. Group III contains just the first and third requirements of Group II; it is similar to old Group II but requires five instead of four years' experience at the trade. Groups IV and V are the same, respectively, as old Groups III and IV.

Under the more stringent priority requirements of the new agreement, Keor-

kle, previously in old Group I, was reclassified and placed in new Group III. He did not qualify for the New Group I for two reasons: the journeyman's examination which he passed was not held under the auspices of Local 269, and he has not been employed for a period of at least five years under a collective bargaining agreement between the parties to the agreement. The latter reason also prevented him from qualifying under new Group II.

Keorkle's case was formally settled on May 21, 1962. The settlement agreement provides (1) that Local 269 would not "operate our hiring hall by unlawfully basing referral upon membership" in the Local; (2) that it would not "discriminate against Frank Keorkle or any other individual in the operation of our hiring hall because he or they are not members of the Local"; and (3) that it would not "in any like or related manner restrain or coerce employees or applicants" in the exercise of their rights under § 7 of the Act. As part of the settlement, the Local paid Keorkle over $2,500 as lost wages.

Despite the fact that the Local had not, since the settlement agreement of May 21, 1962, refused to refer him to an available work assignment when he registered, Keorkle, on January 4, 1963, filed his second charge against Local 269, and also one against the Association. On July 16, 1963, the Regional Director issued a consolidated complaint against the Local and the Association, and set aside the settlement agreement of both Hazeltine and Keorkle—even though the former was not making a complaint—based on the new and two earlier charges. A hearing before the Board was held in October of 1963. At this hearing no evidence was produced to show that the applicants were not referred to job assignments when they filed applications with the Local or that the employers turned them down when they reported in the six-month period immediately before the date of Keorkle's second charge. After the hearing, the Trial Examiner concluded that Local 269 had violated the settle-

ment agreements by committing an act in violation of § 8(b)(2) and (1)(A) of the Act as charged by Keorkle, and that the Association was not shown to have done anything illegal after July 4, 1962, the beginning of the six-month statutory period of limitations. He therefore recommended that a cease and desist order be issued against the Local, and that the complaint against the Association be dismissed. The Board accepted the finding and recommendations of the Trial Examiner as to Local 269, but disagreed with him as to them regarding the Association and issued a cease and desist order, now being sought to be enforced, against both Respondents.

Both Respondents argue that Keorkle's second charge is barred by the six-month statute of limitations of § 10(b) of the Act,[3] and the Local alone maintains that there can be no setting aside of the settlement agreements at this time. In support of this argument they maintain that the agreement does not in terms require discriminatory treatment in favor of members of the Local, and that there was no proof of any discriminatory act within the six-month period immediately preceding the filing of Keorkle's second charge on January 4, 1963.

■ A union may encourage membership in a labor organization by use of the exclusive hiring-hall procedure. Local 100, United Association of Journeymen & Apprentices v. Borden, 373 U.S. 690, 695, 83 S.Ct. 1423, 10 L.Ed.2d 638 (1963). However, § 8(b)(2) of the Act declares it to be an unfair labor practice for the union to do so by causing or attempting to cause an employer to discriminate against an employee in violation of § 8(a)(3) of the Act. Local 357 Intern. Broth. of Teamsters, etc. v. N.L.R.B., 365 U.S. 667, 674, 676, 81 S.Ct. 835, 839, 6 L.Ed.2d 11 (1961).

"It is the 'true purpose' or 'real motive' in hiring or firing that constitutes the test. Id. [Radio Officers', etc. v. National Labor Relations Board, 347 U.S. 17], 43 [74 S.Ct. 323, 98 L.Ed. 455]. Some conduct may by its very nature contain the implications of the required intent; the natural foreseeable consequences of certain actions may warrant the inference. Id., 45 [74 S.Ct. 323]. And see Republic Aviation Corp. v. Labor Board, 324 U.S. 793 [65 S.Ct. 982, 89 L.Ed. 1372]. The existence of discrimination may at times be inferred by the Board, for 'it is permissible to draw on experience in factual inquiries.' Radio Officers [etc.] v. Labor Board, supra, at 49 [74 S.Ct., at 340]."

■ The incorporation of a provision in a collective bargaining agreement affording to union members preference in job referrals by the union violates § 8(b)(2) and (1)(A) of the Act. N. L. R. B. v. Philadelphia Iron Works, 211 F.2d 937, 940 (C.A. 3, 1954); N. L. R. B. v. Gottfried Baking Co., 210 F.2d 772, 779–780 (C.A. 2, 1954). And a union violates the same subsections of the Act when, under an exclusive hiring-hall agreement with an employer, it accords its own members preference in job referrals over nonmembers using its hiring facilities. N. L. R. B. v. Local 1566, I.L.A., 278 F.2d 883 (C.A. 3, 1960), cert. denied 364 U.S. 890, 81 S.Ct. 223, 5 L.Ed.2d 187, 366 U.S. 909, 81 S.Ct. 1083, 6 L.Ed. 2d 234; Local 138, International Union of Operating Engineers v. N. L. R. B., 321 F.2d 130 (C.A. 2, 1963).

Minus the history of Local 269's referral practices, the contract provisions regarding qualifications for referral priority are not necessarily evidence of discrimination.[4] Taking that history into account, however, it is clear that those provisions, when they are carried out,

---

3. This section 29 U.S.C.A. § 160(b), provides: "[No] complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof against whom such charge is made * * *."

4. The Board in its decision states that "a literal reading of the amended contract does not reveal its intrinsic discriminatory nature, except to those members of Local 269 and nonmembers who had

will give preference to applicants who are members of Local 269 and other locals of I.B.E.W. There is no longer any doubt that "earlier events may be utilized to shed light on the true character of matters occurring within the limitations period." Local Lodge 1424, International Association of Machinists, AFL–CIO v. N. L. R. B., 362 U.S. 411, 416, 80 S.Ct. 822, 826, 4 L.Ed.2d 832 (1960). This technique has been used by this court in a number of cases for example, N. L. R. B. v. Clausen, 188 F.2d 439, 443 (C.A. 3, 1951), cert. denied 342 U.S. 868, 72 S.Ct. 108, 96 L.Ed. 653; N. L. R. B. v. Food Fair Stores, Inc., 307 F.2d 3, 7, n. 4 (C.A. 3, 1962). Priority Group I requires that the applicants have passed a journeyman's examination given by Local 269. It also requires, as does Group II, that they have five or more years' experience in the trade and have been employed for a period of at least five years under a collective bargaining agreement between Local 269 and employer members of the Association. Since prior to July of 1962, members of Local 269 received the opportunity, which nonmembers did not get, to pass and be certified as passing the journeyman's examination, and since they were preferred in job referrals over nonmembers, members, who had been certified as having passed the examination by Local 269, could qualify for the first priority group, and if they had not been so certified, they could gain the experience necessary to qualify in the first and second priority groups sooner than nonmembers.[5]

■ The Board found that it was evident that in the years preceding the adoption of the 1962 changes, members of Local 269 had been favored in work referrals "for no reason other than their union membership.", and that the "in-

evitable" consequences of the adoption of the 1962 priority group standards by the Respondents "was to give Local 269 members continued preference in referral."[6] These findings are supported by substantial evidence on the whole record.

■■ The Board did not specifically find that Local 269, by its discriminatory action, intended to encourage membership. It was not necessary for it to have done so. Melville Confections, Inc. v. N. L. R. B., 327 F.2d 689 (C.A. 7, 1964), cert. denied 377 U.S. 933, 84 S.Ct. 1337, 12 L.Ed.2d 297. The effect of the contract was as if it had expressly conditioned referral upon union membership. The foreseeable result or the natural consequences of such a contract is the encouragement of membership. It follows that the charge filed by Keorkle on January 4, 1962, against the Local has been substantiated by proof of an unlawful action within the limitation period, for the maintenance of the contract by the Local within that period is violative of § 8(b) (2) and (1) (A) of the Act.

■ The Board was acting within its authority in setting aside the informal agreements. Wallace Corp. v. N. L. R. B., 323 U.S. 248, 253–255, 65 S.Ct. 238, 89 L.Ed. 216 (1944); International Brotherhood of Teamsters, etc., Local No. 554, AFL–CIO v. N. L. R. B., 104 U.S.App. D.C 359, 262 F.2d 456, 459–461 (1958).

■ As for the Association, there was substantial evidence on the record as a whole that it violated § 8(a) (3) and (1) of the Act within the statutory period. The Association is a party to the collective bargaining agreement. Under that agreement it made Local 269 its agent for referring applicants to employer members for employment. We need not go so far in this case to hold the As-

---

made use of the Union's hiring hall under the terms of the earlier agreement and had knowledge of Respondent Union's practice." 149 N.L.R.B. No. 74.

5. See for example, Local 138, International Union of Operating Engineers v. N.L. R.B., 321 F.2d 130, 134 (C.A.2, 1963).

6. In his Decision, the Trial Examiner states: "Considering the evidence in its entirety, the assertion that the revised standards were established to improve the quality of electricians referred from the hiring hall is not supported by the proof."

sociation responsible for acts of Local 269 in this area. But see N. L. R. B. v. United States Steel Corp., 278 F.2d 896, 898 (C.A. 3, 1960); Morrison-Knudsen Co. v. N. L. R. B., 275 F.2d 914, 917 (C.A. 2, 1960). Here the Association was given notice of the charge filed by Hazeltine and the prior one by Keorkle, and the settlement agreements in which the Local had twice promised not to favor its members unlawfully. The language of the settlement agreements and the circumstances under which they were made put the Association on notice that union membership was a substantial factor in obtaining the opportunity to meet the qualifications in the higher priority groups of the collective bargaining agreement. Nevertheless, the Association agreed to the revised standards and, during the statutory period, continued to maintain that agreement.

■ The Local contends that the contract provisions found to be discriminatory by the Board are permitted by § 8(f) (4) of the Act, which makes a concession to the building and construction industry. This subsection removes from the unfair labor practice area provisions in collective bargaining within such industry which specify "minimum training or experience qualifications for employment or provide for priority in opportunities for employment based upon length of service with such employer, in the industry or in the particular geographical area." The short answer to this contention is that the subsection does not sanction the use of seemingly objective criteria as a guise for achieving illegal discrimination. Preconditioning the hiring of employees upon union membership is an unfair labor practice in all industries, including the building and construction industry. As the Senate Committee which recommended passage of § 8(f) stated:

"The section permits an agreement providing for an exclusive referral system based upon objective criteria for referral; *such a referral system must be conducted without discrimination in regard to union membership* (as now provided by law) but the order of referral may be governed by objective standards such as those set forth in the section." [7] (Italics ours.)

■ The Local also claims that the order of the Board denied it the right guaranteed by § 8(f) of the Act to enter into an agreement with the Association wherein priority in referral is based upon past employment under contracts with the Association. This claim stands on no firmer footing than its prior contention. As to its objection that the proscription of the order is without limitation as to time, we need but quote the Trial Examiner, whose recommendation in this regard was accepted by the Board. "This proscription (against use of prior employment under earlier contracts between the Union and the Association as a criterion for preferential referral) shall remain in effect for such time as that criterion would have the effect of perpetuating the illegal preferences accorded members of Local 269 in the past." In the circumstances of this case, the Board was justified in prohibiting the use of the prior employment requirement until the advantages from unlawful referral disappear. See Atlantic Refining Company v. F. T. C., 381 U.S. 357, 372–373, 85 S.Ct. 1498, 14 L.Ed.2d 443 (1965).

The Board affirmed, on the ground that no prejudicial error was committed, twenty-eight rulings by the Trial Examiner to which exceptions had been taken by the Respondents. The Local would have us review each of them. In the view we take of the Board's Decision and Order, we deem it unnecessary to rule upon or discuss them.

The Order of the Board will be enforced.

---

7. See S.Rep. No. 187 on S. 1555, 86th Cong., 1st Sess. 58, U.S.Code Congressional and Administrative News 1959, p.

2373, I Leg.Hist. of the Labor-Management Reporting and Disclosure Act of 1959, p. 452 (GPO 1959).