**GREAT LAKES CARBON CORPORA-TION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 10190.

United States Court of Appeals Fourth Circuit.

Argued Feb. 8, 1966.

Decided April 27, 1966.

Edward F. Callan, New York City (Thomas M. Kerrigan and Charles O. Strahley, and Putney, Twombly, Hall & Skidmore, New York City, on brief), for petitioner.

Paul J. Spielberg, Atty., National Labor Relations Board (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Elliott Moore, Atty., National Labor Relations Board, on brief), for respondent.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BOREMAN, Circuit Judges.

SOBELOFF, Circuit Judge:

Great Lakes Carbon Corporation, by implementing superseniority provisions in a collective bargaining agreement, denied job opportunities to three employees who would have been entitled to them but for the existence of those provisions. The NLRB found that the employer's conduct violated section 8(a) (1) and (3) of the National Labor Relations Act. 152 N.L.R.B. No. 103. This is the employer's petition to set aside the Board order.

In 1959 the company and the International Chemical Workers Union, Local 427, conducted negotiations in an attempt to reach a collective bargaining agreement. The negotiations proving unsuccessful, the union struck. It is agreed that this was an economic and not an unfair labor practice strike. During the strike, which lasted from April to June, 1959, the employer hired replacements for striking employees, telling them that they would be accorded "retention protection," i. e., job security. In addition, striking employees who returned to work before the end of the strike were given similar assurances.

After the strike ended, the company and the union, in July, 1959, entered into a collective bargaining agreement which, in short, gave the replacements and employees who abandoned the strike preferential standing on the seniority lists with respect to future layoffs, preferred shifts, open jobs, and vacation times. When the contract expired in 1962, a new contract was entered into which retained the superseniority provisions.[1]

In February and March, 1964, the three employees, J. P. Pritchard, B. R. Thompson, and R. B. Whetstine, filed charges with the Board, alleging that the company discriminated against them by awarding available job opportunities to other employees, who, although junior according to other seniority provisions in the agreement, were treated as senior to the charging parties solely by virtue of the superseniority granted by the contract to those who worked during the 1959 strike.

The trial examiner was of the opinion that an unfair labor practice could not be based on the "execution and continuation or maintenance of the 1962 agreement," because the applicable 6-month statute of limitations had run.[2] The trial examiner said further that he found it unnecessary to rule on the question whether the superseniority provisions were invalid on their face, because the General Counsel had disclaimed reliance on that contention. The trial examiner, however, did find a violation by virtue of the fact that the company "enforced, gave effect to, and applied the agreement within the statutory period."

The General Counsel and the company both excepted to rulings of the examiner. The Board supported the examiner's disposition of the case, but substituted its

---

1. The 1962 contract expired November 25, 1965.

2. Section 10(b) of the Act provides that: "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board * * *." 29 U.S. C.A. § 160(b).

own rationale. It found that the General Counse. did not in fact disclaim reliance on the contention that the provisions are discriminatory on their face.[3] Accordingly, the Board ruled: " * * * in order to sustain our findings herein, it is essential that we find, as we do, that independently of the legality of the execution of the contract, the provisions themselves are *discriminatory on their face.*" (Emphasis retained; footnote omitted.)

The Board ordered the employer to cease and desist from applying the discriminatory provisions, to eliminate them from the agreement, and to offer employees Pritchard, Thompson, and Whetstine the job opportunities they would have enjoyed but for the discriminatory provisions and make them whole for any loss of pay.

The leading case in this area is NLRB v. Erie Resistor Corp., 373 U.S. 221, 83 S.Ct. 1139, 10 L.Ed.2d 308 (1963), in which the Supreme Court held that the employer had violated section 8(a) (1) and (3) by offering, during the course of a strike, 20 years' additional seniority to those hired as replacements for striking employees. The Court noted that the superseniority grant had the inherent effect of unlawfully intimidating strikers by discriminating against them in favor of nonstrikers, and that this unlawful consequence could form the basis of an unfair labor practice even absent a finding of specific illegal intent.

The company urges that under *Erie Resistor* superseniority clauses are not *per se* unlawful, but are unlawful only when it appears that they interfere with the employees' exercise of their section 7 rights. It is the company's contention that because the board has made no specific finding that the superseniority provisions here deter employees from exercising their section 7 rights, the provisions cannot become the basis of an unfair labor practice.

It is true that the charges in the instant case did not arise from action taken while a strike was on, as in *Erie Resistor,* but this factual distinction does not blunt the point of *Erie Resistor.* The intimidating effect of superseniority persists even after the termination of a strike. The company's argument overlooks the fact that in *Erie Resistor* the Supreme Court quoted with approval the Board's conclusion that the superseniority plan creates

"a cleavage in the plant continuing long after the strike is ended. Employees are henceforth divided into two camps: those who stayed with the union and those who returned before the end of the strike and thereby gained extra seniority. This breach is reemphasized with each subsequent layoff and stands as an ever-present reminder of the dangers connected with striking and with union activities in general." 373 U.S. at 231, 83 S.Ct. at 1147.

This reasoning seems precisely applicable to the case before us and forecloses the distinction proposed by the employer. Indeed, the superseniority plan here in question has a more pervasive effect than the one condemned in *Erie Resistor.* This plan affects not only future layoffs, to which the *Erie Resistor* plan was limited, but also the assignment of vacation times, preferred shifts, and open jobs. The Board decided that the superseniority provisions in the instant case are "discriminatory on their face," irrespective of the legality of the execution of the contract.

The employer is doubtless correct in its assertion that the Board is barred by section 10(b) from considering the circumstances surrounding the creation of the superseniority plan in 1959. In this regard the Board indeed agrees with the employer. See Local Lodge No. 1424, I.A.M. (Bryan Manufacturing Co.) v. NLRB, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960). The only purpose possibly to be served by a consideration of those circumstances would be to establish unlawful discrim-

---

3. The company does not contest this finding of the Board.

inatory motivation in incorporating the plan in the collective agreement. However, as *Erie Resistor* makes clear, an employer's motivation in instituting a superseniority plan of the type here in question is irrelevant.[4] The significant factor in assessing the validity of such a plan is its effect on the employees. See also Melville Confections, Inc. v. NLRB, 327 F.2d 689 (7th Cir. 1964). Where the plan discriminates against employees with respect to layoffs, vacation times, preferred shifts, and open jobs solely on the basis of the employees' participation in a concerted activity protected by section 7, we have no hesitation in agreeing with the Board's conclusion that the plan is unlawful on its face and that its application and enforcement violate section 8(a) (1) and (3).[5]

The company also attacks the Board's remedy, which in part requires the employer to provide Pritchard, Thompson, and Whetstine the job opportunities they would have enjoyed but for the application of the superseniority provisions. The company contends that reference to the several other, lawful seniority provisions to determine the three employees' seniority status is inappropriate, and that the company should be given an opportunity to renegotiate new seniority provisions to cover these three employees.

█ We find no merit in this contention. Reference to the other, lawful seniority provisions in the contract is an appropriate way to ascertain what seniority status Pritchard, Thompson, and Whetstine should enjoy. The Board has not imposed its own seniority plan on the company or the union; it has merely eliminated an unlawful provision from the contract and ordered the parties to administer the agreement according to the concededly lawful provisions included therein.[6]

In light of these circumstances we find the Board's remedial order unobjectionable. The petition to set the order aside is

Denied.

---

4. Bowen Products Corp., 113 N.L.R.B. 731 (1955), relied on by the employer, is inapposite. There, parties to a collective agreement administered a *concededly valid* seniority provision so as to discriminate against an employee. The Board dismissed the complaint, holding that the unlawful discrimination, if it occurred, occurred more than six months before the charge was filed, when the discriminatee was placed at the bottom of the seniority list, and not subsequent thereto, when he was laid off. To sustain the charge, the Board said, required proof of the parties' unlawful motivation at the time the employee was placed at the bottom of the list—an issue barred from inquiry by the lapse of the six-month period. The Board noted specifically that the case differed from those involving contractual provisions unlawful on their face. 113 N.L.R.B. at 733. Cf. Local Lodge No. 1424, I.A.M. (Bryan Manufacturing Co.) v. NLRB, 362 U.S. 411, 419–420, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960).

5. We therefore have no occasion to consider the validity of a seniority plan which in the context of a corporate acquisition secures for union employees greater benefits than those conferred on nonunion employees. See Whiting Milk Corp., 145 N.L.R.B. 1035, enforcement denied, 342 F.2d 8 (1st Cir. 1965) (Chief Judge Aldrich dissenting.)

An additional contention of the employer may be disposed of in this footnote. The employer urges that the Board should have declined to take cognizance of the case and should instead have ordered the employer and the union to resolve the issue by resort to the arbitration machinery contained in the collective bargaining agreement. It is a sufficient answer to say that it is within the province of the Board to determine whether a contract provision violates the National Labor Relations Act. See section 10(a), 29 U.S. C.A. § 160(a).

6. Furthermore, section XVIII of the contract provides that "whenever any provision of this contract may be at variance with any applicable law * * * or regulation, such provision shall be suspended * * * and such decision * * * shall not invalidate the other provisions."