**DURA CORPORATION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 17022.

United States Court of Appeals
Sixth Circuit.

July 31, 1967.

James D. Tracy, Detroit, Mich., Dykema, Wheat, Spencer, Goodnow & Trigg, Detroit, Mich., on brief, for petitioner.

Warren M. Davison, N. L. R. B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Elliott C. Lichtman, Atty., N. L. R. B., Washington, D. C., on brief, for respondent.

Before O'SULLIVAN, CELEBREZZE and PECK, Circuit Judges.

CELEBREZZE, Circuit Judge.

Dura Corporation (Dura) seeks review of an Order of the National Labor Relations Board which found that the Petition had violated Section 8(a) (1) and (3) of the Act.[1] The Board's order is reported at 156 N.L.R.B., No. 29.

The undisputed facts are as follows: Dura is engaged in the manufacture, sale, and distribution of automotive and appliance products and has fifteen plants located in different parts of the country. Its production and maintenance employees are represented by five unions, comprising twelve separate bargaining units. Since 1943 Dura has maintained a profit sharing plan for its executive and salaried personnel. This plan provides that it is restricted to "any salaried employee who is not a member of a Collective Bargaining Unit recognized by such Employer." The plan is under control of the Board of Directors who each year determine the percentage of profit to be disbursed or set aside for the participants.

In 1964 the salaried employees at Dura's Ypsilanti plant selected an AFL-CIO Union as their collective bargaining representative. Bargaining sessions commenced and the Union proposed that a pension plan be included in the contract. Dura proposed such a plan and the Union made counter proposals. The Company agreed to the counter proposals. Thereafter, however, and before the contract was signed, the Union withdrew the pension plan request and asked that its members be continued in the profit sharing plan. Dura refused on the ground that the involved employees would, by reason of being members of a Collective Bargaining Unit, be ineligible to remain in the profit sharing plan. The Union then refused to further discuss a pension plan and filed an unfair labor practice charge against Dura because of its refusal to amend its profit sharing plan to cover employees in the involved bargaining unit at the Ypsilanti plant. Thereafter the Company and the Union agreed upon a bargaining contract, which went into effect without containing any pension plan.

The bargaining contract provided in part, in Paragraph 12.03:

"The parties acknowledge that during the negotiations which resulted in this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to all proper subjects of collective bargaining and that all such subjects have been discussed and negotiated upon and the agreements contained in this Contract were arrived at after the free exercise of such rights and opportunities. Therefore, the Company and the Union, for the life of this Agreement, each voluntarily and unqualifiedly waives the right and each agrees that the other shall not be obligated to bargain collectively with respect to any subject or matter not specifically referred to or covered in this Agreement, even though such subject or matter may not have been within the knowledge or contemplation of either or both of the parties at the time they negotiated or signed this Agreement."

1. 29 U.S.C., Section 158(a) (1) and (3).

■ On the basis of these stipulated facts, the Board found that the profit sharing plan, by its own language, was a per se violation of the Act in that the natural consequence of Dura's action was the discouragement of union membership. Radio Officers' Union, etc. v. National Labor Relations Board, 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455; Local 357, International Broth. of Teamsters, etc. v. National Labor Relations Board, 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11; National Labor Relations Board v. Erie Resistor Corp., 373 U.S. 221, 83 S.Ct. 1139, 10 L.Ed.2d 308.

In Gaynor News Co. v. National Labor Relations Board, 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455 (one of three cases consolidated in *Radio Officers'*, supra), the Company granted wage and vacation benefits solely to union members. The Supreme Court said, at page 46, 74 S.Ct. at page 338:

"In Gaynor, the Second Circuit also properly applied this principle. The court there held that disparate treatment of employees based solely on Union membership status is 'inherently conducive to increased union membership.' In holding that a natural consequence of discrimination, based solely on union membership or lack thereof, is discouragement or encouragement of membership in such union, the court merely recognized a fact of common experience—that the desire of employees to unionize is directly proportional to the advantages thought to be obtained from such action. No more striking example of discrimination so foreseeably causing employee response as to obviate the need for any other proof of intent is apparent than the payment of different wages to union employees doing a job than to non-union employees doing the same job."

Directly in point is Melville Confections, Inc. v. National Labor Relations Board, 327 F.2d 689 (C.A.7, 1964). There the company established an employee profit sharing plan in 1958. The plan was limited to "a regular full time employee of the Company, not represented by a Union designated as the bargaining agent for the employee." The Court said, at page 691:

"We agree with the Board, and the trial examiner whose findings and conclusions the Board adopted, that under the facts and circumstances disclosed by the record no independent evidence of additional acts of the company either directly establishing animus or specific intent to abrogate employee Section 7 rights, or from which such animus or intent might reasonably be inferred, was necessary to support a finding of a Section 8(a) (1) violation.

"The conduct of the company in continuing to maintain the provision making union representation a disqualification for eligibility to participate in its employer profit-sharing plan benefits and continuing to bring such restriction to the attention of its employees through distribution of the booklet setting forth company policy constituted a per se violation of Section 8(a) (1). It was employer conduct inherently destructive of rights guaranteed by Section 7. By its inherent nature it interfered with, restrained and coerced employees in the exercise of their right to be represented for collective bargaining by a labor organization. It placed a penalty on such action—a disqualification to participate in profit-sharing benefits. It carried with it its own inherent evidence of intent—it strains credulity to ascribe some other or different intent to the provision."

■ Dura maintains that the parties bargained about "all proper subjects of collective bargaining" and that by virtue of Paragraph 12.03 of the contract, the Union waived the statutory right of the twenty-eight employees not to be excluded from the plan solely because of Union representation. When Dura's position on this issue remained unchanged, the Union filed an unfair practice charge.

■ These circumstances leave the intentions of the parties in doubt. We

think the preferable rule to be that a waiver must be in "clear and unmistakable" language, Timken Roller Bearing Co. v. National Labor Relations Board, 325 F.2d 746 (C.A.6, 1963), and National Labor Relations Board v. Perkins Machine Co., 326 F.2d 488 (C.A.1, 1964).

The Order of the Board will be enforced.