GOODYEAR TIRE AND RUBBER COM-PANY, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 18927.

United States Court of Appeals Sixth Circuit.

July 18, 1969.

Edward C. Kaminski, Akron, Ohio, for petitioner, Buckingham, Doolittle & Burroughs, Akron, Ohio, on the brief.

Roger Sabo, N. L. R. B., Washington, D. C., for respondent, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Nancy M. Sherman, Michael F. Rosenblum, Attys., N. L. R. B., Washington, D. C., on the brief.

Before WEICK, Chief Judge, and CELEBREZZE and PECK, Circuit Judges.

CELEBREZZE, Circuit Judge.

Goodyear Tire and Rubber Company (Goodyear) seeks review of an order issued by the National Labor Relations Board on March 20, 1968 and the Board cross-petitions for enforcement of its order. The Board found that Goodyear had committed several unfair labor practices during a campaign by the Union[1] to organize nurses employed by Goodyear in several hospitals it maintains for its employees. The proceedings before the Board are reported at 170 N.L.R.B. No. 79 (March 20, 1968).

The Trial Examiner found that Goodyear interrogated the nurses about their union activity; threatened to withhold wage increases; granted wage increases during the Union's organization-al campaign in an attempt to dissipate its appeal; and threatened the nurses with loss of benefits under Goodyear pension and insurance plans should they organize, all in violation of Section 8(a) (1) of the National Labor Relations Act, 29 U.S.C. § 151 et seq. The Board adopted the Trial Examiner's findings and directed Goodyear to cease and desist from engaging in such activities. We find substantial evidence to support these findings and accordingly grant enforcement to the Board's order to the extent that it deals with the unfair labor practices set forth above.

A more difficult question is presented with regard to Board findings that language in the Goodyear employee benefit plans mentioned above violated Section 8(a) (1) of the Act. Goodyear maintains two pension plans, one contributory, the other noncontributory, for salaried employees. It also has in effect a group insurance plan for all Goodyear employees, that is, hourly-rated employees as well as salaried employees. The objectional language, found in one form or another in all three plans, states that employees are not eligible to participate in them if they are represented by a collective bargaining agent. The Trial Examiner concluded that this language violated Section 8(a) (3) of the Act, hence, Section 8(a) (1) of the Act as well; the Board, however, rejected this conclusion and found that the language violated only Section 8(a) (1) of the Act. The Board's order directs Goodyear to delete the language from the three plans. We think this portion of the Board's order does too much and we decline to enforce it.

During the unfair labor practice hearing, Goodyear established that the language in question was inserted in the plans at the Union's request to distinguish between employees who were covered under Company plans and employees covered under various benefit plans negotiated by their collective bargaining representatives. This in fact is

---

1. United Rubber, Cork, Linoleum and Plastic Workers of America, AFL-CIO.

the historical basis for the language. In 1950, when the Union was successful in organizing certain Goodyear employees, instead of seeking to continue coverage of its members under the Goodyear plans, it chose to negotiate its own plans. Furthermore, there is no evidence in the record that the Union ever sought to have its members covered under the Goodyear plans, or that Goodyear refused to bargain about including these employees in the Company plans.

■ In the proceedings before the Trial Examiner, Goodyear attempted to show that none of its employees lost benefits as a result of joining a labor union and thereby becoming ineligible to participate in the Goodyear plans. This evidence would have shown that when an employee selected a bargaining agent he was transferred from the Goodyear plans to one negotiated by that representative *without any interruption in coverage.* Such a showing would of course negate the basis for an 8(a) (3) violation—that Goodyear was discriminating against its employees by imposing "[a] term or condition of employment to * * * discourage membership in any labor organization * * *." The Trial Examiner, however, rejected this evidence, as well as other evidence offered by Goodyear to show that the language did not have the proscribed effect, and concluded that the challenged language amounted to a *per se* violation of Section 8(a) (3) of the Act. Relying on two decisions of this Circuit, Dura Corp. v. N.L.R.B., 380 F.2d 970 (1967), and Kroger Co. v. N.L.R.B., 401 F.2d 682 (1968), and the Seventh Circuit's decision in Melville Confections v. N.L.R.B., 327 F.2d 689 (1964), cert. denied 377 U.S. 933, 84 S.Ct. 1337, 12 L.Ed.2d 297, the Trial Examiner held that the language in question was so inherently discriminatory that business purpose was irrelevant. Without articulating any reasons for its action, the Board rejected the Trial Examiner's conclusion and found that the language violated Section 8(a) (1). While we do not agree with the Board's finding that the language

violated Section 8(a) (1), it properly rejected the findings made by the Trial Examiner. In the above cases relied upon by the Trial Examiner, there was evidence that the discriminatory language was enforced through an actual loss of benefits by employees who selected bargaining representatives and thereby lost coverage under the company plans. Given these circumstances it can be said that the language in question was but a part of a company design to discourage membership in labor organizations. Consequently, the Board acted within its authority by directing the companies to strike the language from their plans. The above cited cases demonstrate that the Section 8(a) (3) violations resulted from the use of the questionable language, and not from the language *per se.*

■ Our focus, however, is much narrower since the Board found that the disputed language violated Section 8(a) (1) of the Act. A finding of an 8(a) (1) violation requires that we consider the language complained of to see whether it interfered with employee rights or tended to interfere with them. N.L.R.B. v. Ford, 170 F.2d 735 (6th Cir.1948). In the instant case, the language in question was never intended to be used as a wedge against unionization. See Firestone Synthetic Fibers Co. v. N.L.R.B., 374 F.2d 211 (4th Cir.1967). The fact that Goodyear may have independently violated Section 8(a) (1) by exploiting this language does not raise the challenged language to a similar status. Nor does the record show that this language tended to inhibit the nurses in the exercise of rights secured to them under the Act.

■ We conclude therefore that the portion of the Board's order directing Goodyear to delete the disputed language from its plans will not be granted enforcement. That portion of the Board's order dealing with the other 8(a) (1) violations, including threats made by Goodyear that the nurses would lose benefits should they organize will be granted enforcement. In addition, since

the unfair labor practices in this case were directed at nurses working exclusively in plant hospitals, we do not believe that the purposes of the Act will be furthered by requiring Goodyear to post notices of the Board's order throughout its entire industrial network. Accordingly, notices of Goodyear's intention to comply with the Act should be confined solely to the hospitals in which the nurses are employed.

The Board's order is enforced subject to modification expressed herein.