NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

ENSIGN ELECTRIC DIVISION OF HARVEY HUBBLE, INC., and United Steelworkers of America, Local 5925, AFL–CIO–CLC, Respondents.

Center on National Labor Policy, Inc., Amicus Curiae.

No. 84–1658.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 5, 1985.

Decided Feb. 19, 1986.
Rehearing and Rehearing En Banc Denied April 1, 1986.

Before MURNAGHAN and CHAPMAN, Circuit Judges and HAYNSWORTH, Senior Circuit Judge.

CHAPMAN, Circuit Judge:

On July 22, 1985, an opinion was filed deciding that *Gulton Electro-Voice, Inc.,* 266 N.L.R.B. 406 (1983), *enforced sub nom. Local 900, International Union of Electrical Workers v. NLRB,* 727 F.2d 1184 (D.C.Cir.1984), was not such an abrupt break from prior precedent that it would come as a great surprise, and thus it could be given retroactive application. *See NLRB v. Ensign Electric Division of Harvey Hubble, Inc.,* 767 F.2d 1100 (4th Cir. 1985). We granted the petition for rehearing in order to reconsider the question: whether this action is barred by the six month limitation contained in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) (1982). This limitation provides in pertinent part:

> That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made....

This point was presented and argued in the original appeal, but not mentioned in our opinion.

Ensign Electric manufactures electrical distribution equipment and component parts in West Virginia for the mining industry. It has maintained a collective bargaining relationship with Local 5925 of United Steel Workers of America for many years. Since 1970 these collective bargaining agreements have contained a clause granting preferential seniority to local union officials, including the president, vice president, recording secretary, treasurer, and grievance committeemen.

In March 1979, the union elected new officers including Douglas Jarrell as treasurer and George McCoy as recording secretary. About the same time, Ensign Electric was required to lay off a number of employees, and from March 1979 to April 1981, the work force was reduced from 262 employees to 68 employees. In order to protect his job, George McCoy, the recording secretary, exercised preferential seniority on August 31, 1979. The layoffs continued, and Douglas Jarrell exercised his preferential seniority rights as treasurer of the union on April 10, 1981. When each of these officers exercised his "super seniority" rights, an employee with greater natural seniority was laid off.

The original complaint was filed by the National Labor Relations Board on November 4, 1980, as a result of charges made by a laid-off employee and union member filed September 15, 1980. This complaint was amended on June 10, 1981, and covered claims of employees laid off on April 10, 1981, as a result of the exercise of super seniority rights by the union treasurer.

The employer and the union contend that the present action is untimely because the following events took place outside the six-month § 10(b) period: (1) the initial negotiation of the super seniority clause, which first appeared in the contract between Ensign Electric and Local 5925 in 1970; (2) the latest renewal of the contract containing this clause (February 10, 1979); (3) the secret ballot election of Jarrell as treasurer and McCoy as recording secretary in March 1979; (4) the assumption of office by Jarrell and McCoy in June 1979; (5) the wide discussion of the super seniority clause among the members as early as 1979; and (6) the actual exercise of preferential seniority August 31, 1979 by recording secretary McCoy.

The employer and the union agree that the exercise of preferential seniority on April 10, 1981, by the union treasurer Jarrell was within six months of the April 22, 1981 filing of the charge with the Board, but they contend that such exercise was merely a later manifestation of the officer's already changed status, and since neither the union nor the employer made any further determinations regarding the status, duties, or identities of the individual union officers within six months of the filing of the charge, such charge was barred by § 10(b). They cite as support *Local Lodge No. 1424 v. NLRB*, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960), and *NLRB v. Auto Warehousers, Inc.*, 571 F.2d 860 (5th Cir.1978).

We find that *Local Lodge No. 1424* and *Auto Warehousers* are not controlling. In *Local Lodge No. 1424*, the employer and the local union had entered into a collective-bargaining contract which contained a clause recognizing the union as the exclusive bargaining representative for all of the employees. It also contained a union security clause by which all employees were given 45 days to join the union. It later developed that at the time of the execution of this contract, the union did not represent a majority of the employees. This lack of majority status at the time of execution was the subject of charges filed with the Board ten months and twelve months after the execution of the original contract. The Board conceded that charges as to the contract's execution were barred by § 10(b), but it argued that it was an unfair labor practice to enforce the illegal agreement and that this was not time barred. The Board admitted that the union security clause was valid on its face, but contended that since it was entered into when the union did not have majority status, it gave

rise to two separate unfair labor practices, one being the execution of the contract, and the other being its continued enforcement. In discussing the use of § 10(b) the court distinguished two factual situations.

The first is one where occurrences within the six-month limitations period in and of themselves may constitute, as a substantive matter, unfair labor practices. There, earlier events may be utilized to shed light on the true character of matters occurring within the limitations period; and for that purpose § 10(b) ordinarily does not bar such evidentiary use of anterior events. The second situation is that where conduct occurring within the limitations period can be charged to be an unfair labor practice only through reliance on an earlier unfair labor practice. There the use of the earlier unfair labor practice is not merely "evidentiary," since it does not simply lay bare a putative current unfair labor practice. Rather, it serves to cloak with illegality that which was otherwise lawful. And where a complaint based upon that earlier event is time-barred, to permit the event itself to be so used in effect results in reviving a legally defunct unfair labor practice.

362 U.S. at 416–17, 80 S.Ct. at 826–27 (footnote omitted). The Court found *Local Lodge No. 1424* to fall within the latter category because enforcement of the union security clause was not an unfair labor practice except for the fact that the agreement was executed at a time that the union did not have majority representation, and this event was time-barred.

*Local Lodge No. 1424* does not apply to a contract that is invalid on its face. 362 U.S. at 423, 80 S.Ct. at 830. An agreement that is unlawful on its face does not require the proof of facts or unfair labor practices outside the six-month period. This is the factual situation we confront, for the contract between Ensign Electric and Local 5925 grants super seniority to union officials solely because of their status as union officials and discriminates against employees for "union related" reasons.

In *NLRB v. Auto Warehousers, Inc.*, there was a collective bargaining provision allowing shop stewards super seniority for purposes beyond layoff and recall. The court analyzed the *Auto Warehousers* situation under *NLRB v. Milk Drivers & Dairy Employees, Local No. 338*, 531 F.2d 1162 (2d Cir.1976) and found such super seniority for purposes beyond lay off and recall to be presumptively unlawful, but not unlawful on its face. However, *Gulton Electro-Voice, Inc.*, 266 N.L.R.B. 406 (1983), *enforced sub. nom. Local 900, International Union of Electrical Workers v. NLRB*, 727 F.2d 1184 (D.C.Cir.1984), determined that super seniority to union officers without regard to whether they performed on-the-job contract administration functions was unlawful and not presumptively unlawful. In light of *Gulton, Auto Warehousers* is no longer persuasive. *See NLRB v. Local 1131*, 777 F.2d 1131, 1140 (6th Cir.1985).

In *Great Lakes Carbon Corporation v. NLRB*, 360 F.2d 19 (4th Cir.1966), we decided that a super seniority plan favoring employees who worked during a strike was unlawful on its face and that the action was not barred by the six month limitation of § 10(b). With the super seniority plan being unlawful on its face, there was no need to consider the circumstances surrounding the creation of the plan, which circumstances admittedly took place more than six months before the action was brought. *See id.* at 21–22.

Since the Ensign Electric Local 5925 contract grants super seniority to union officials solely because of their status as union officials, this provision is unlawful on its face. Thus, no evidence outside the terms of the contract is required to prove the unfair labor practice, and § 10(b) does not apply.

As to all other issues, our views remain as expressed in our opinion decided July 22, 1985 and found in 767 F.2d 1100.

ENFORCEMENT GRANTED.

HAYNSWORTH, Senior Circuit Judge, dissenting:

I adhere to my view expressed in dissent when this case was before us earlier, *see*

767 F.2d at 1103 *et seq.*, that *Gulton* should not be applied retroactively to make exercise of these super-seniority rights unlawful. Should I agree with my brothers on that score, however, I could not agree that the contract was unlawful on its face.

At the time the successive contracts were negotiated and executed and at the time of the layoffs, there was no relevant precedent holding such super-seniority provisions unlawful. Though the members of the National Labor Relations Board were divided on the subject, such precedents as there were supported the legality of the super-seniority clause.

Moreover, even after *Gulton*, the super-seniority provision is not unlawful on its face unless one knows or assumes that it extends super-seniority to one or more union officials who have no on-the-job responsibilities for contract administration. Thus I think that, if *Gulton* is to be applied retroactively, the six month limitations period is triggered by an actual layoff based upon a claim of super-seniority by a union official having no on-the-job responsibility for contract administration.