NATIONAL LABOR RELATIONS
BOARD, Petitioner,
v.
The CELOTEX CORPORATION,
Respondent.
No. 21994.

United States Court of Appeals
Fifth Circuit.
June 28, 1966.
Rehearing Denied Aug. 4, 1966.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Solomon I. Hirsh, Atty., N. L. R. B., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Leo McGuire, Atty., N. L. R. B., for petitioner.

James B. O'Shaughnessy, Robert E. Ackerberg, Chicago, Ill., for respondent.

Before RIVES and GEWIN, Circuit Judges, and ALLGOOD, District Judge.

RIVES, Circuit Judge:

The Trial Examiner, affirmed by the Board, found that The Celotex Corporation (hereafter Celotex) had violated Section 8(a) (5) and (1) of the National Labor Relations Act [1] by refusing to furnish to the Union during bargaining negotiations certain financial data. The Trial Examiner recommended an order, which the Board adopted, that Celotex cease and desist from refusing to disclose to the Union "upon appropriate request

[1] "(a) It shall be an unfair labor practice for an employer—
"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

\* \* \* \* \*

"(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159 (a) of this title."
29 U.S.C.A. § 158(a) (1) and (5).

therefor during collective bargaining negotiations, financial records of the Respondent which said Local is entitled to see." The order also required Celotex to take the following affirmative action: "Upon request at an appropriate time, furnish to said Local all financial records of the Respondent which said Local shall be entitled to see." To that part of the recommended order the Trial Examiner appended a footnote which is quoted in the margin.[2]

■ The Trial Examiner, affirmed by the Board, found also that Celotex violated Section 8(a) (5) and (1) of the Act (see n. 1, supra) by unilaterally changing the existing grievance procedure without bargaining thereon with the Union. That finding and the accompanying order [3] depend for their validity on whether an impasse had occurred after bargaining in good faith.[4] The critical issue of good faith depends upon the claimed violation by Celotex's refusal to furnish financial data.[5]

Celotex operates eight manufacturing plants in as many States. The plant at Marrero, Louisiana, with which this case is concerned, was constructed in 1921 for the production of insulation board from bagasse, the residual of cane stalk remaining after sugar is extracted. Some 900 different products are made there, and they constitute nearly 40 per cent of the total production of all eight plants. Since 1941, Celotex has operated this plant under contracts with the Union. The record discloses that no unfair labor practice case against Celotex has heretofore been litigated.

During a one-year period beginning March 8, 1961, Celotex and the Union were parties to a detailed contract covering sixty printed pages, in which Celotex agreed to substantial restrictions upon its power to schedule production operations and to assign employees to particular jobs. By the time negotiations for a new contract began on February 12, 1962, Celotex was asserting that it needed relief from those restrictions in order to reduce costs and produce better products because of increased competition in the industry. The number of employees at the Marrero plant had reduced from over 2100 in 1956 to 1500 and operations were down to 75% of capacity. During that interval the insulation board industry had increased its productive capacity by 50%.

While Celotex's main motive appears to have been to remain competitive with the industry, it requested contract revisions which would reduce or eliminate premium overtime pay and would reduce the amount of job seniority each employee would earn.

At one point in the negotiations Celotex specifically denied that it was claiming an inability to pay, and said that "We can pay whatever we think is right to pay." It insisted, however, that concessions from the Union regarding scheduling and incentive pay were necessary to make the Marrero plant competitive and to insure that plant's survival.

2. "11 Two comments are appropriate with respect to this provision: (1) a collective labor agreement is currently in effect, and I do not imply that Local 4–179 is entitled to see the Respondent's financial records prior to negotiations on a succeeding agreement; and (2) the Respondent, in subsequent negotiations, may not demand concessions like those demanded in the 1962 negotiations, and Local 4–179 may not be entitled to see the financial records in such subsequent negotiations."

3. That Celotex cease and desist from "making any changes in the terms and conditions of employees represented by said Local, without first bargaining with said Local thereon, if the nature and circumstances of such changes, unilaterally made, would violate the Act."

4. See National Labor Relations Board v. Tex-Tan, Inc., 5 Cir. 1963, 318 F.2d 472, 482.

5. The order broadly requires Celotex also to cease and desist from "in any like or related manner interfering with, restraining or coercing employees in the exercise of the rights guaranteed in Section 7 of the Act." The order also contains the usual posting and notification provisions.

Celotex computed gross profit and loss on a plant basis; that is, plant revenues diminished by the plant's manufacturing costs, such as wages and salaries, raw materials, depreciation, insurance, etc., was considered "gross profit" of the plant. "Net profit" was determined only for the corporation as a whole. Corporate overhead included the costs of a research center, of 17 district sales offices, of the Chicago, Illinois, staff which provides traffic, legal, patent, accounting, industrial relations, credit and collection services, and of national executive offices. No proration by plant of corporate overhead items was in existence. Nonetheless, Celotex insisted that "each plant has to absorb its proportionate share of the corporate costs." The Union negotiator insisted on seeing at least the gross profit figures for the Marrero plant, stating: "You haven't convinced us that Marrero is in bad shape. If you can show us, then this Union will be willing to work with you to get relief." Celotex insisted that gross profit figures would not be meaningful and that net profit records of the plant were not maintained, and refused to disclose any of its financial records.

The relevancy of profit and loss data to any proposal is not nearly so clear as it was in the leading case of N. L. R. B. v. Truitt Mfg. Co., 1956, 351 U.S. 149, 76 S.Ct. 753, 100 L.Ed. 1027. It has, however, been well said by the Second Circuit (Judges Learned Hand, Swan and Frank) that:

"The rule governing disclosure of data of this kind is not unlike that prevailing in discovery procedures under modern codes. There the information must be disclosed unless it plainly appears irrelevant. Any less lenient rule in labor disputes would greatly hamper the bargaining process, for it is virtually impossible to tell in advance whether the requested data will be relevant except in those infrequent instances in which the inquiry is patently outside the bargaining issue." National Labor Relations Bd. v. Yawman & Erbe Mfg. Co., 2 Cir. 1951, 187 F.2d 947,[6] 949.

■ Upon the whole record we cannot "displace the Board's choice between two fairly conflicting views, even though the Court would justifiably have made a different choice had the matter been before it *de novo*." Universal Camera Corp. v. N. L. R. B., 1951, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456. We therefore hold that the Board properly found that Celotex violated Section 8(a) (5) and (1) of the Act by refusing to disclose to the Union certain of its financial records, including the "gross profits" of the plant, and by unilaterally changing the existing grievance procedure.

■ Celotex argues that the Board's remedial order is too vague to be enforcible, and its vagueness cannot be disputed. The subject of good faith bargaining is, however, so broad that it would be difficult, if not impossible, under the circumstances of this case to draft a more definite order.[7] We do, however, agree with Celotex that, in the light of its good labor record, that part of the order is too broad[8] which directs Celotex to cease and desist from "in any like or related manner interfering with, restraining or coercing employees in the exercise of the rights guaranteed in Section 7 of the Act."

Except for the part just quoted, the Board's order will be enforced.

Modified and enforced.

6. See also Boston Herald-Traveler Corporation v. N.L.R.B., 1 Cir. 1955, 223 F.2d 58, 60, et seq.; Curtiss-Wright Corp. v. N.L.R.B., 3 Cir. 11965, 347 F.2d 61, 69; compare N.L.R.B. v. Movie Star, Inc, 5 Cir., 361 F.2d 346, decided May 24, 1966.

7. Compare Oregon Coast Operations Assn., 1955, 113 N.L.R.B. 1338; Long Bell Lumber Co., 1955, 113 N.L.R.B. 1231.

8. Compare N.L.R.B. v. Express Publishing Co., 1941, 312 U.S. 426, 436, 61 S.Ct. 693, 85 L.Ed 930; N.L.R.B. v. West Texas Utilities Co., 5 Cir. 1941, 119 F.2d 683, 686.