**METLOX MANUFACTURING COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 20299.

United States Court of Appeals
Ninth Circuit.

Revised May 5, 1967.

Frank Simpson, Sheppard, Mullin, Richter & Hampton, Los Angeles, Cal., for petitioner.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., Warren M. Laddon, Leonard M. Wagman, Attys., N.L.R.B., Washington, D. C., Ralph E. Kennedy, Director, N.L.R.B., Los Angeles, Cal., for respondent.

Before WASHINGTON *, BARNES and BROWNING, Circuit Judges.

WASHINGTON, Senior Circuit Judge:

The Company in this case claimed that it could not give a wage increase or grant other economic benefits to its employees because of financial inability on its part. The Union suggested that the inability to pay might be due to inefficient management, to excessive executive salaries, or to a bleeding of the assets by controlling stockholders. The Company's reply offered to allow the Union to choose a Certified Public Accountant, subject to the Company's approval, and to permit him to make an unlimited examination of the Company's books. The examination was to be made in the Company's office, with the cost borne by the Union. However, the details of the Company's financial records were—said the Company—not to be disclosed to the Union or to any third parties. The C.P.A. could only advise the Union whether or not the Company's profit and loss statements "were true" and perhaps, although the offer was found by the Board not to be clear on this point, whether or not the statements constituted fair repre-

sentations of the Company's actual financial position.

The Union was dissatisfied with the amount of disclosure permitted by this offer, and ultimately called a strike. The Board, after holding a hearing, concluded that the Company had refused to bargain in good faith with the Union, in violation of Section 8(a) (5) and (1) of the National Labor Relations Act, in that it had unduly restricted the Union's access to details of its financial and other records. It said:

"* * * A union is not entitled to review the records of Respondent" [the Company] for the purpose of enabling "the Union to suggest or urge efficiency or other changes which could make more funds available for wages. * * * But, good faith bargaining, in requiring an employer to substantiate his inability-to-pay plea, requires the employer to show that the figures of profit and loss are not only accurate but that they do or do not constitute fair representations of the company's financial condition."

\* \* \* \* \* \*

We "find that Respondent in limiting the accountant to a 'yes or no' report is not substantiating or permitting substantiation of its inability-to-pay plea, and by this conduct it has not bargained in good faith." [Footnote citations omitted.] We "cannot with preciseness indicate here the scope that the accountant's report should take. Elaboration or explanation of his conclusions should be permitted; on the other hand, the report need not be an efficiency survey and critique." **

---

* George T. Washington, Senior United States Circuit Judge, sitting by designation.

** And see the Full Board's summary of its holding in this case in White Furniture Co., 161 N.L.R.B. No. 23, 63 N.R.R.M. 1227 (1966), where it said in part:

"The Board has also declined to require an employer to give a union such sensitive information as executive sal-

aries and detailed breakdowns of operating expenses.[10]

10. Metlox Manufacturing Company, supra, footnote 7, at 1394–95. The Board there approved a check of the employer's books by a union accountant, limited to the purposes of verifying profit and loss figures offered by the employer and determining whether there were any factors that would make the employer's figures misleading."

The Board found that the strike was caused by the Company's refusal to bargain in good faith.

The Board's order directed the Company to cease and desist from refusing to bargain in good faith with the Union, and from interfering in any manner with the efforts of the Union to bargain collectively. The Company was ordered affirmatively to bargain collectively with the Union upon request; to reinstate the striking employees upon application; to make them whole for any loss of earnings resulting from a failure to reinstate; and to post appropriate notices.

■ Whatever else may be said about the claims advanced on either side, it seems clear that the Board could properly conclude that it was inconsistent with good faith bargaining for the Company to insist upon limiting disclosure by the accountant to the Union to a naked "yes or no" answer as to whether the profit and loss statements furnished by the Company fairly reflected the Company's financial condition. A reasonable amount of explanation and elaboration seems not only to be relevant but also "reasonably necessary" to enable the Union, in its role as bargaining agent, to form a fair judgment as to the Company's claimed inability to meet any of the Union's demands. Curtiss-Wright Corp., Wright Aeronautical Div. v. NLRB, 347 F.2d 61, 68 (3d Cir. 1965).

■ The Board properly refrained from specifying in advance precisely what details must be furnished to render the accountant's report meaningful to the Union. That determination must necessarily await the event.

The petition for review will be denied, and the Board's order will be enforced.

BARNES, Circuit Judge, (concurring in part and dissenting in part):

I concur in the majority's conclusion that the petitioner Metlox did not bargain in good faith when it restricted the Union auditor to a "yes or no" conclusion as to whether the previously submitted profit and loss statements were "true". I dissent from the enforcement of the Board's order in its present form.

The parties here are in substantial accord as to the applicable law. NLRB v. Truitt Mfg. Co., 4 Cir., 224 F.2d 869, stands for the proposition that where an employer claims inability to pay, he may be required to substantiate that claim. The Court in *Truitt* indicated that whether substantiation was to be required should turn upon the particular facts of each case. The employer here does not resist substantiation here, so we are not faced with determining whether the fact situation would require it absent the employer's agreement.

The issue is whether the employer may limit the scope of disclosure of the audit consistent with its obligation of good faith in bargaining. I think that it may, and the Board apparently agrees. See White Furniture Co., 161 N.L.R.B. No. 23, 63 L.R.R.M. 1227 (1966). The question then becomes—does the limitation proclaimed by the employer here go so far as to constitute a lack of good faith?

The only concern we have here for substantiation of the employer's financial statements derives from its claim of inability to pay the requested increases in wages. Cf., United Fire Proof Warehouse Co. v. NLRB, 356 F.2d 494 (7th Cir. 1966). The purpose in presenting the financial statements to the Union was to sustain the employer's claim of financial disability to pay higher wages. If those statements are fair and accurate, it would seem that the employer has gone far enough to meet the burden upon it "to furnish to the Union relevant data to enable the representative effectually to bargain for the workers." Sinclair Refining Co. v. NLRB, 306 F.2d 569, 571 (5th Cir. 1962). Inability to pay is logically based upon operations which are conducted at a negligible profit or

at a loss. Statements which fairly reflect a negligible profit or a loss *a fortiori* are enough to sustain a good faith claim of inability to pay. The details of accurate financial statements may or may not be irrelevant to the question of whether the employer's claim of inability was made in good faith.[1] Cf., NLRB v. Movie Star, Inc., 361 F.2d 346, 349 (5th Cir. 1966). Of course, if the statements are false or substantially inaccurate they would not be substantiation of a good faith claim under NLRB v. Truitt Mfg. Co., supra.

To show that the statements are fair reflections of what they purport to represent means more than demonstrating clerical precision or accuracy, as the Board's analysis here suggests. See C.T. p. 46, ll. 35–42. Abnormal items or unusual treatment can make clerically accurate statements misleading. The liquidation of inventories valued on the last-in, first-out basis could significantly distort figures reflecting operations, as could accelerated depreciation or changes in accounting methods. If any such distorting factors exist, the accountant should be free to disclose the existence of such factors and their net effect upon the financial statements. Yet such disclosure would not require the employer to sacrifice the confidentiality of its records by allowing indiscriminate revelation of any details which the accountant might choose to disclose.

The Board's order, which the process of this court will enforce, does not tell Metlox what it must do. Metlox has at all times been willing to substantiate its claim of inability to pay the requested wage increases. The Board's order, without elaboration, merely tells Metlox that it must substantiate its claim, and it must now do so on pain of contempt. The vague generalities of the majority[2] and the Board's order offer no indication of what Metlox must do to comply with the law. Such an approach, in my opinion, negates the suggestion that the employer may, within a certain range, retain the confidentiality of its records.

I would enforce the Board's order modified to provide that in substantiating its claim the employer can limit the accountant to (1) a "yes or no" answer to whether the financial statements are, within a reasonable degree, clerically accurate, and (2) the disclosure of the existence of any items which, in the judgment of the accountant, might have significantly distorted the figures reflecting operations and the net effect of such distortion, if any.

---

1. The Union requested details of seven items on the profit and loss statements:
   Net Sales (total sales less sales discounts)
   Factory and Shipping Wages
   Other Salaries and Wages
   Materials, Supplies, Expenses
   Advertising and Commissions
   Financial Expenses, Interest, Factoring
   Depreciation

   We point out that details of the second item, Factory and Shipping Wages, would be relevant in bargaining on wages, hours and work standards, and those details must be given to the Union in context with such bargaining. We perceive that the employer does not object to presenting such information. See Petitioner's Opening Brief, pp. 3–4.

   But the inquiry in this case concerns the employer's ability to pay. If the statements as a whole are correct and fair the details are not germane to the issue. Even the details of Factory and Shipping Wages would be irrelevant on this question. An item may be relevant in one context and irrelevant in another. Sylvania Elec. Prod., Inc. v. NLRB, 358 F.2d 591 (1st Cir. 1966).

2. "A reasonable amount of explanation * * *."
   " * * * details [which] must be furnished to render the accountant's report meaningful to the Union."