**UNITED FURNITURE WORKERS OF AMERICA, AFL–CIO, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 11413.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 7, 1967.

Decided Dec. 27, 1967.

Martin Raphael, New York City, for petitioner.

Hans J. Lehmann, Atty., N.L.R.B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Solomon I. Hirsh, Atty., N.L.R.B., on brief) for respondent.

Before BOREMAN and BUTZNER, Circuit Judges, and WOODROW W. JONES, District Judge.

WOODROW WILSON JONES, District Judge:

This case is here on a Petition by United Furniture Workers of America, AFL-CIO, hereinafter referred to as the "Union", to review and set aside an order of the National Labor Relations Board, hereinafter referred to as the "Board", issued on October 25, 1966, pursuant to Section 10(c) of the National Labor Relations Act, as amended (61 Stat. 136, 73 Stat. 519, 29 U.S.C. § 151 et seq.). The Board in its order, dis-

missed the Complaint which the Union had filed against White Furniture Company, Mebane, North Carolina, hereinafter referred to as the "Company", for alleged unfair labor practices. The Board's decision and order are reported at 161 NLRB, No. 23.

The alleged unfair labor practices occurred at Mebane, North Carolina, where the Company manufactures and sells furniture, and all the parties concede that this Court has jurisdiction under Section 10(f) of the Act.

■ The only question before this Court is whether the Board properly found that the Company did not violate Section 8(a) (1) and (5) of the Act by refusing to produce certain financial information as requested by the Union. The Board found the Company's acts were not unlawful in refusing to produce for Union inspection extensive financial data pertaining to its gross profits, deductions therefrom, and taxes for the five (5) years prior thereto. We agree with this decision.

The point of contention between the Union and the Company related to certain Christmas bonuses which had been paid by the Company since the year 1957. The bonuses were based upon a percentage of the Company's profits and distributed among the employees according to seniority. Each year the Company's Board of Directors decided whether a bonus would be paid and, if so, in what amount.

In November 1964, after the Union was certified by the Board, the Company and the Union began negotiations wherein one item discussed was the Union's proposal to increase the Christmas bonus. On November 19, 1964, the Union asked the Company to furnish information as to "percentage of profits before taxes used to determine the percentage of annual earnings paid to each seniority group." On January 19 and 27, 1965, the Union again requested the percentage of profits used to determine bonuses for the years 1960, 1961, 1962, 1963 and 1964, and also for the percentage of annual earnings paid to employees in 1964, broken down by seniority groups, and the amount of bonus paid each employee in the bargaining unit.

The Company furnished information as follows:

1) It used 25% of its adjusted profits before taxes to determine the amount of the Christmas bonuses for the years 1960, 1961, 1962, 1963 and 1964. The method of determining adjusted profits being the same for all years.

2) The following percentages of annual earnings were paid to each seniority group for 1964:

| | |
|---|---|
| 0–5 years | 4.94% |
| 5–10 years | 8.20% |
| 10 years and over | 10.25% |

3) A list of employees showing the amount of Christmas bonus before tax deductions paid each employee in the bargaining unit for Christmas 1964.

During April 1965, the Union requested the following additional information which the Company refused to furnish, resulting in a complaint being filed with the Board's Regional Office in Winston-Salem, North Carolina:

1) The amount of gross profits, both before and after taxes, for the years 1960, 1961, 1962, 1963 and 1964.

2) The amount of gross profits "after taxes and business deductions," as well as "gross profits after taxes, business deductions and adjustments" for the same years.

3) Specifications of "business deductions and adjustments", including the amount allocated for officers' salaries and bonuses, plant and equipment, inventory, depreciation, and all other business deductions and adjustments.

The Company rejected this request on the ground that it was under no legal obligation to furnish the requested data and made no suggestion that it was financially unable to pay the increased bonuses asked by the Union.

The Union alleged that the Company committed unfair labor practices in that it refused to furnish this information in violation of Section 8(a) (1) and (5) of

the Act. Upon a hearing, the Trial Examiner found that the Company had violated Section 8(a) (1) and (5) of the Act, but upon review by the Board, this decision was reversed and the Complaint dismissed. The Board concluded that the Union had not shown a specific need for such data at the time such request was made and was therefore not entitled to the information demanded.

■ To constitute good faith bargaining, the Company is required to furnish wage and related information pertaining to employees in the bargaining unit, and such information is presumptively relevant, but where the employer rebuts such relevancy, the Union must by reference to the circumstances of the case, demonstrate more precisely the relevancy of the data it requests. Curtiss-Wright Corp., etc. v. NLRB, 347 F.2d 61 (3rd Cir. 1965).

The Board, in its Order dated October 25, 1966, said:

"The Board has held that unions have a presumptive right to certain information about unit employees, such as wage rates and the cost of fringe benefits. Whitin Machine Works, 108 NLRB 1537, enfd. 217 F.2d 593, 594 (4th Cir. 1954); cert. denied 349 U.S. 905, 75 S.Ct. 583, 99 L.Ed. 1242 (1955); Sylvania Electric Products, Inc., 154 NLRB No. 149, enfd. 358 F.2d 591 (1st Cir. 1966). The rule is different for data about the employer's profits, or other aspects of its financial condition; the union must show a specific need in each particular case for that type of information. Metlox Manufacturing Company, 153 NLRB 1388, at 1394; 378 F.2d 728 (9th Cir. 1967). An employer may provide the justification for requiring profit data by his own actions if he claims financial inability to meet the union's demands, for then the union must know the facts behind the employer's claims in order to bargain intelligently. N.L.R.B. v. Truitt Manufacturing Company, 351 U.S. 149, 76 S.Ct. 753, 100 L.Ed. 1027 (1956). Profit data will not be required merely because it would be 'helpful' to the union, however. Pine Industrial Relations, 118 NLRB 1055, at 1061, affirmed in relevant part sub nom. International Woodworkers of America, etc. v. N.L. R.B., 105 U.S.App.D.C. 37, 263 F.2d 483 (1959). The Board has also declined to require an employer to give a union such sensitive information as executive salaries and detailed breakdowns of operating expenses. Metlox Manufacturing Company, supra.

As noted, the Respondent (Company) here made no suggestion that it was unable to pay the increased bonuses asked by the Union. We also note that there was no allegation that the Respondent has refused to bargain in good faith other than by refusing to give profit information. The sole issue confronting us in this proceeding is whether the Respondent should be required to divulge details about its financial condition * * * "

The Christmas bonus here is part of the employee's wages but, the Company has furnished information concerning bonuses paid to Union employees for the preceding five (5) years. The Union contends that the additional information sought is wage data because the employer's adjusted profit is derived from these figures and the unit employees' Christmas bonuses are paid from 25% of the adjusted profit. However, the Union's decision to call profits "wages" does not make them wages, and putting a different label on the information requested does not permit the Union to claim that the profit information must be furnished without showing, "by reference to the circumstances of the case, * * * the relevance of the data it desires." Curtiss-Wright Corp., etc. v. N.L.R.B., supra.

It is a basic business principle that all wages paid to employees constitute a percentage of gross profits or gross income, yet no case has held that gross profits and the deductions therefrom are presumptively relevant in collective bargaining. The Union knew precisely how much of the Company's profits or income

had been paid to employees as wages and as bonuses in the past. It knew the total dollar amount of wages and the percentage of profits used to determine the amount of the bonus. It also knew the formula used by the Company to distribute the total bonus among its employees. Without a showing of relevancy, the Company is not required to give more.

The Union claims that it was entitled to the profit information requested notwithstanding the fact the company did not raise the issue of economic inability. It relies on the Ninth Circuit case of NLRB v. Western Wirebound Box Co., 356 F.2d 88, and the Fifth Circuit case of NLRB v. Celotex, 364 F.2d 552, to substantiate its contentions on this issue. These cases are not applicable. In each, the company had asserted an unsubstantiated claim in bargaining and the data sought by the Union were relevant to substantiation of that claim. This is not the situation before us. The company has made no unsubstantiated claim to which the data would be relevant.

 The Union asked for and received a substantial amount of information about bonuses from the Company, including the dollar amount of the bonuses paid to bargaining unit employees in 1964, the seniority groups into which employees were separated for bonus purposes and the percentages of annual earnings paid as bonuses to members of each seniority group. The Board found that such information would clearly give the Union important evidence as to what future yields it could expect under the bonus system then in effect. It found the Union could bargain intelligently and effectually without the divulgence by the Company of the additional requested financial data. It found from the evidence of this case that the Company had bargained in good faith. It is well settled that the Court can set aside the Board's action in such matters only if it acted without substantial evidence or has abused its discretion. NLRB v. Whitin Machine Works, supra.

The Court finds that the Board's decision is a reasonable one and is supported by substantial evidence in the record. The Union has not shown any abuse of discretion warranting the reversal of the Board's decision that the requested financial data was not presumptively relevant.

The Board correctly held that the Company's refusal to supply the additional requested information did not violate Section 8(a) (1) and (5) of the Act and the Petition for Review will be denied and the Board's Order will be affirmed.

Petition denied, order enforced.