KINGSPORT PUBLISHING CORPORA-
TION, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 18048.

United States Court of Appeals
Sixth Circuit.

Sept. 4, 1968.

Edwin O. Norris, Kingsport, Tenn., (David W. Zugschwerdt, F. Allan Kelly, Kingsport, Tenn., on the brief), for petitioner. Hunter, Smith, Davis, Norris, Waddey & Treadway, Kingsport, Tenn., of counsel.

Nancy M. Sherman, N. L. R. B., Washington, D. C., (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel-Mallet-Prevost, Asst. Gen. Counsel, on the brief), for respondent.

Before CELEBREZZE, PECK and McCREE, Circuit Judges.

PECK, Circuit Judge.

In this action Kingsport Publishing Company, hereinafter the "Company," petitioned for review, and the National Labor Relations Board cross-petitioned for enforcement of an order of the Board dated June 21, 1967 (165 NLRB No. 116), which held the Company to be in violation of Section 8(a) (5) and (1) of the National Labor Relations Act, as amended (29 U.S.C. § 158(a) (5) and (1) ), upon a charge of unilaterally altering a condition of employment during the course of negotiations with the Union* for a new collective bargaining agreement.

The Company and the Union executed a collective bargaining agreement on November 1, 1962, which extended through October 31, 1964. On August 25, 1964, the Union notified the Company by letter that "on October 31 any agreement—written, oral or implied—or any conditions of employment or other understanding now in effect between the [Company] and [the Union] will terminate," and offered to meet with the Company to negotiate an agreement with respect to wages, hours and other

---

* Kingsport Typographical Union No. 940, an affiliate of the International Typographical Union.

terms and conditions of employment. A number of bargaining sessions were held between September, 1964, and November, 1966, at which time no agreement had been consummated.

On June 22, 1965, approximately eight months after the expiration of the 1962 contract, employee Ivil Lytz was discharged by the Company for refusal to carry out a foreman's instructions and for deliberately ignoring posted instructions regarding holiday shifts. (It is not contended that this discharge was discriminatory or that it constituted an independent violation under the Act.) The Union then took the position that the Company should reinstate Lytz and process his discharge in accordance with the grievance procedure contained in the contract which terminated in October, 1964. The Company refused the request to so process the grievance, and the Union thereafter rejected the Company's offer to discuss the discharge during contract negotiations. The Union subsequently filed the unfair labor practice charges upon which the complaint underlying the order on review was based.

It is the Board's position that a grievance procedure constitutes a mandatory subject for collective bargaining (N.L.R.B. v. United Nuclear Corp., 381 F.2d 972 (10th Cir. 1967); N.L.R.B. v. Celotex Corp., 364 F.2d 552 (5th Cir.), cert. denied, 385 U.S. 987, 87 S.Ct. 601, 17 L. Ed.2d 450 (1966); N.L.R.B. v. Century Cement Mfg. Co., Inc., 208 F.2d 84 (2d Cir. 1953) ), and that the Company violated the Act by unilaterally altering, or stated more precisely, by abandoning the grievance procedure provided in the expired 1962 contract. See N.L.R.B. v. Katz, 369 U.S. 736, 82 S.Ct. 1107, 8 L. Ed.2d 230 (1962); Fibreboard Paper Products Co. v. N.L.R.B., 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964).

It is clear that no bad faith motive or anti-union sentiment is imputable to the Company by any of its actions, as evidenced by the non-discriminatory nature of the discharge and the Company's offer to discuss the grievance in question at bargaining negotiations or to process it in accordance with the new grievance procedure tentatively agreed upon once the new contract was executed. Moreover, the Company did not attempt to substitute a new grievance procedure in lieu of the one contained in the expired contract during the course of negotiations. Compare Industrial Union of Marine & Shipbuilding Wkrs. v. N.L.R.B., 320 F.2d 615, at 620 (3rd Cir. 1963), cert. denied, Bethlehem Steel Co. v. N. L.R.B., 375 U.S. 984, 84 S.Ct. 516, 11 L.Ed.2d 472 (1964). The unfair labor practice charge in this case rests solely upon the Company's refusal to process the grievance relating to Lytz's discharge in accordance with the provisions of the 1962 collective bargaining contract.

The grievance procedure contained in the 1962 contract between the Company and the Union provided for binding arbitration as the final step in the settlement of any dispute. The Board, by adopting the Trial Examiner's findings and conclusions, held that "it would, of course, seem totally inconsistent to hold that a grievance procedure would survive a contract but the arbitration clause, the final and binding part of that procedure, would not." While congressional policy favors the settlement of labor disputes by the arbitral process rather than by economic warfare (See Section 203(d) of the Labor Management Relations Act, 29 U.S.C. § 173(d); United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrier & Gulf Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)), arbitration nevertheless rests upon a contractual basis. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); Amalgamated Clothing Workers v. Ironall Factories Co., Inc., 386 F.2d 586 (6th Cir. 1967). Thus, although the Board by its order would require the Company to process the grievance in dispute in accordance with the provisions of the 1962 collective bargaining contract, the Board does not refute

the Company's contention that neither party to the contract could successfully have brought suit under Section 301 of the Labor Management Relations Act to compel arbitration. Cf. Procter & Gamble Independent Union v. Procter & Gamble Mfg. Co., 312 F.2d 181 (2d Cir. 1962), cert. denied, 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963).

The Company argues that the Union, by its letter of August 25, 1964, fully terminated all working conditions and other understandings under the contract then in effect. The Board, however, found that the letter "was no more than required by Section 8(d) of the Act." While we disagree with the Board's conclusion, since it seems quite clear that the language used went far beyond anything required by Section 8(d), we find it unnecessary to decide whether the Union's letter, standing alone, constituted a "clear and unmistakable" waiver (Dura Corp. v. N.L.R.B., 380 F.2d 970 (6th Cir. 1967) ) of the alleged statutory right to bargain about any change regarding a condition of employment.

■ There is little evidence in the record establishing the extent to which the formal grievance procedure was actually employed by the parties during the effective term of the 1962 contract, and what evidence there is shows that the grievance arising out of Lytz's discharge was to be the first to be formally processed "outside of normal negotiations." As stated in N.L.R.B. v. Frontier Homes Corp., 371 F.2d 974, 980–981 (8th Cir. 1967):

> "An expired contract in the Labor-Management field must be viewed in light of its effect upon the past operation of the plant and the entire industrial pattern which has been established, in part, by it, together with the customs, practices, and traditions of the industry and the Company. Expired contract rights affecting mandatory bargaining issues, therefore, have no efficacy unless the rights have become a part of the established operational pattern and thus become a part of the status quo of the entire plant operation."

Because of the absence of evidence of prior use of the grievance procedure, it certainly cannot be said that the grievance machinery was part of the "established operational pattern" at the Company's plant, or that the Company unlawfully upset the status quo by resisting attempts to settle the grievance by means other than direct negotiations with the Union. Cf. N.L.R.B. v. Katz, supra at 746, 82 S.Ct. 1107.

In accordance with the foregoing, it is here determined that the Board's conclusion that the Company unlawfully refused to bargain with the Union in violation of Section 8(a) (5) and (1) of the Act was unwarranted. Accordingly, enforcement of the Board's order requiring the Company to reinstate Lytz with back pay and to process the grievance in accordance with the expired 1962 contract should be denied.

Enforcement denied.