**BOB'S CASING CREWS, INC., Petitioner-Cross-Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent-Cross-Petitioner.**

**No. 28395.**

United States Court of Appeals, Fifth Circuit.

July 14, 1970.

---

4. Fed.R.Crim.P. 52(b).

R. Robert Huff, Huff & Huff, Tulsa, Okl., for petitioner.

Marcel Mallet-Prevost, Asst. General Counsel, N.L.R.B., Washington, D.C., Elmer P. Davis, Director, 16th Region, N.L.R.B., Fort Worth, Tex., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, John I. Taylor, Douglas L. Leslie, Attys., N.L.R.B., for respondent.

Before GODBOLD, SIMPSON and MORGAN, Circuit Judges.

PER CURIAM:

Bob's Casing Crews, Inc. (hereinafter the Company) seeks review of the Trial Examiner's conclusion, and the National Labor Relations Board's adoption thereof, that the Company violated Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158, for its refusal to rehire one Billy Ray Loper. The Board ordered that the Company cease and desist, and that it offer Loper fulltime employment, make him whole for any loss of earnings, and post an appropriate notice on the Company premises. The Company seeks to have this order set aside and the Board seeks its enforcement.

On review here, the Company raises several issues. However, since the case is to be remanded for further hearings concerning the basic facts upon which the Trial Examiner grounded his finding of a Section 8(a) (1) violation, we need only decide the threshold procedural issues presented.

First, the Company contends that the Board did not have jurisdiction of the subject matter or the parties in this case; that its business is essentially local in nature and is not affecting commerce; and that its timely motion to dismiss for this reason should have been granted. This contention is without merit. The Company does business in both Texas and New Mexico. Furthermore, the Company admittedly meets the $50,000 outflow test for non-retail enterprises announced in Siemon's Mailing Service, 122 N.L.R.B. 81, regardless of when the casing crew industry came into existence. It is well settled that

\* \* \* Congress intended to and did vest in the Board the fullest *jurisdictional* breadth constitutionally permissible under the Commerce Clause.

N.L.R.B. v. Reliance Fuel Oil Corp., 371 U.S. 224, 83 S.Ct. 312, 9 L.Ed.2d 279 (1963).

■ Secondly, the Company contends that the charging party, the International Union of Operating Engineers, Local 826 (hereinafter Union) was not shown to be a labor organization within the meaning of Section 2(5) of the Act. According to the record, the Trial Examiner specifically stated that, with relation to an earlier representation proceeding filed by the Union against the Company, "[t]he Regional Director, on October 8, issued his Decision * * * finding the Union to be a labor organization * * * ". While this statement relates to a different proceeding, and was raised as a jurisdictional defense, it nevertheless involved the same parties and is dispositive of this particular issue in this case. Therefore, the failure to prove the Union was a labor organization in this instance is not fatal to the unfair labor practice charged.

The next issue raised by the Company, and the one upon which we base our decision to remand, is that the Company has been denied its fundamental right of procedural due process because the facts upon which the Trial Examiner based his conclusion were never put in issue until after the close of the hearing.

■ The Trial Examiner concluded that the Company's violation of 8(a)(1) was predicated on the fact that its refusal to reemploy Loper was motivated by the fact that Loper had engaged in "concerted activity" while on a job at Red's Casing Crews, Inc. (hereinafter Red's), another casing crew company which had hired Loper. The question which is left unanswered by both the Trial Examiner's and the Board's decisions, as well as the record and the briefs of the parties, is whether Loper's conduct at Red's did amount to "concerted activity" so as to come under the protection of the Act.

None of the pleadings disclose that "concerted activities" at Red's was the basis of the 8(a)(1) charge. The charge, filed by the Union on August 9, 1968, alleged that the Company had discriminated against Loper by refusing to employ him "because of membership and activities" on behalf of the Union. The complaint, filed by the Board on October 22, 1968, does allege that one of the reasons the Company refused to reemploy Loper was that he "* * * engaged in * * * concerted activities for the purpose of collective bargaining or mutual aid or protection". However, this allegation could understandably have been referring to other activity (Loper engaged in union activities during the Spring of 1968, including a strike on April 18th). Despite applications by the Company to make the charge more definite, it appears that this complaint did not put the Company on notice that the "concerted activities" referred to therein meant Loper's conduct at Red's.

Nor does the hearing itself, in December, 1968, reveal any evidence that the Board was relying on the "concerted activities" at Red's as the basis for the 8(a)(1) charge. The testimony at the hearing concerning the events at Red's was slight, demonstrating the nugatory position this issue held in the minds of the parties.

In addition to the Company's lack of notice as to these grounds and therefore its lack of preparation and investigation as to whether Loper's conduct at Red's was protected "concerted activity", this court is unable to review facts and testimony that might adequately substantiate the Trial Examiner's conclusion. The record does establish that Loper's activity at Red's was a factor in the Company's decisions not to reemploy him. However, this factor may have been a legitimate business reason, unless it can be shown that Loper's conduct at Red's was protected "concerted activity".

The record is unclear as to whether Loper "walked off" the job at Red's, or was "relieved"; whether the working conditions were so intolerable as to justify Loper's "walking off"; whether there was any protest made to Red's supervisors; and whether his activity was

**264**

actually "concerted" or carried out by himself. See N.L.R.B. v. Washington Aluminum Co., 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1962).

Until a hearing is held to determine the merits of this issue and the parties are given an opportunity to prepare for an adversarial presentation on the question of whether Loper's conduct at Red's was protected "concerted activity", the record does not show sufficient findings to support the Board's decision. The case is therefore

Remanded for further hearing.