**BOB'S CASING CREWS, INC.,** Petitioner-Cross Respondent,

v.

**NATIONAL LABOR RELATIONS BOARD,** Respondent-Cross Petitioner.

No. 71–2445

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

April 19, 1972.

Rehearing Denied June 1, 1972.

---

* [1] Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, 5 Cir. 1970, 431 F.2d 409, Part I.

**1302**

R. Robert Huff, Huff & Huff, Tulsa, Okl., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Washington, D. C., Elmer P. Davis, Reg. Director, N.L.R.B., Forth Worth, Tex., Peter G. Nash, Gen. Counsel, John D. Burgoyne, John M. Flynn, Attys., N.L.R.B., for respondent.

Before JOHN R. BROWN, Chief Judge and GOLDBERG and MORGAN, Circuit Judges.

GOLDBERG, Circuit Judge:

This is a petition for review of an order of the National Labor Relations Board issued against Bob's Casing Crews, Inc., and a cross-application for enforcement of the Board's order. The petitioner requests this Court to set aside the Board's order, alleging (1) an absence of substantial evidence supporting findings of the Trial Examiner and the Board, (2) a misinterpretation of Section 7 of the National Labor Relations Act, and (3) diverse procedural errors. We find each of the petitioner's challenges unmeritable, and we therefore direct enforcement of the Board's order.

This case has been decided by the Board and reviewed by this Court once before. In the original proceeding the Board, agreeing with the Trial Examiner, found that one Billy Ray Loper was refused employment by the petitioner because he walked off the job at Red's Casing Crews, Inc. The Board further found that Loper's action in walking off the job at Red's constituted activity protected by Section 7 of the National Labor Relations Act. Therefore, the Board concluded that the petitioner's refusal to rehire Loper was violative of Section 8(a) (1) of the Act. On appeal of that original order this Court found that "[t]he record does establish that Loper's activity at Red's was a factor in the Company's decision not to reemploy him. However, this factor may have been a legitimate business reason, unless it can be shown that Loper's conduct at Red's was protected 'concerted activity.'" Accordingly, this Court remanded the case for a determination of whether or not Loper's conduct at Red's Casing Crews, Inc. was indeed protected "concerted activity." Bob's Casing Crews, Inc. v. NLRB, 5 Cir. 1970, 429 F.2d 261, 263–

264. Pursuant to our direction, a further hearing was held before a trial examiner and the following was established.

In August of 1968 Red's Casing Crews, Inc. was hired by Standard Oil Company of Texas to "lay down" some 10,000 feet of casing at a location approximately 160 miles from Odessa, Texas. Billy Loper was a member of the casing crew which arrived at the job site on August 5. As the crew was preparing for work, a representative of Standard Oil approached Crew Hauler Shelton and requested that the crew, in addition to laying down the 10,000 feet of casing, pick up some 10,000 feet of drill pipe. The entire crew discussed the additional job order and decided that they would perform the initial job but would be too tired to pick up the drill pipe. Accordingly, Shelton agreed to attempt to arrange for a relief crew to pick up the drill pipe. At about noon on the same day, one of Red's field representatives arrived at the job site and began talking with Shelton. Loper approached the two men and told them that the crew wanted relief for the picking up of the drill pipe and that if the crew were not relieved, they would walk off the job. In the early morning hours of August 6 the initial job order was completed; a relief crew arrived to pick up the drill pipe; and the original crew members returned to their homes in Odessa. During the afternoon of August 6, Shelton visited Loper at his home and told him that Red's president and owner had instructed Shelton to fire Loper because he had threatened to walk off the job the night before. On the basis of these facts the trial examiner and the Board concluded that Loper's activities at Red's constituted protected, concerted activity within the meaning of the National Labor Relations Act. Therefore, the Board reaffirmed its original decision and order holding that the petitioner's refusal to hire Loper because he engaged in protected, concerted activity at Red's violated Section 8(a)(1) of the Act. From this reaffirmance

of the Board's order, the petitioner appeals.

The Company first asserts that the findings of the Board are not supported by substantial evidence. Essentially, the petitioner contends that the evidence at the hearings revealed (1) that Loper acted alone and not in concert with any other crew members, (2) that no protest was ever made by Loper to Red's concerning the work at the job site, (3) that Loper never threatened to walk off the job, (4) that Loper was never discharged at Red's, and (5) that Loper lied to the petitioner at the time he sought to be rehired. All of these alleged facts are based on evidence offered by the Company which was discredited by the Trial Examiner and the Board. The findings of the Trial Examiner and the Board, as set forth above, are based principally upon the testimony of Loper. To the extent that the petitioner asserts that the testimonial conflicts between Loper and the Company witnesses should have been resolved differently, we note that it is established law that credibility choices are for the Board. E. g., NLRB v. Plant City Steel Corp., 5 Cir. 1964, 331 F.2d 511. In addition, we cannot conclude that the testimony relied on by the Trial Examiner and the Board "carries its own death wound" and that the discredited evidence "carries its own irrefutable truth." Pittsburgh S.S. Co. v. NLRB, 1949, 337 U.S. 656, 660, 69 S.Ct. 1283, 1285, 93 L.Ed. 1602, 1606, quoting from NLRB v. Robbins Tire & Rubber Co., 5 Cir. 1947, 161 F.2d 798, 800. While the record in this case contains a considerable amount of evidence in support of the Company's asserted facts, it also emcompasses admissible evidence validating the findings of both the Trial Examiner and the Board. Therefore, we conclude that the record as a whole evinces substantial evidence in support of the Board's findings.

We next turn to the petitioner's assertion that the activity engaged in by Loper while working for Red's was not protected, concerted activity within

the meaning of Section 7 of the Act.[1] Petitioner does not deny that under Section 7 employees have the right to protest concertedly to management a particular condition of their employment which they consider objectionable and to strike or threaten to strike in support of their protestations. *See, e. g.,* NLRB v. Washington Aluminum Co., 1962, 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298; NLRB v. Laney & Duke Storage Warehouse Co., 5 Cir. 1966, 369 F.2d 859. However, petitioner does contend that Section 7 encompasses only activity which is in protest of then-existing conditions of employment. Essentially, the Company argues that no matter how nefarious an employer's proposed changes in working conditions might be, employees have no right to concert in order to frustrate that malefaction until they have experienced its malign embraces. We do not think such a "try it—you'll like it" philosophy is embodied in Section 7 of the Act. This is evidenced principally by those decisions holding that a sympathy strike is protected, concerted activity under Section 7 of the Act. *See, e. g.,* NLRB v. Louisville Chair Co., 6 Cir. 1967, 385 F.2d 922, cert. denied, 1968, 390 U.S. 1013, 88 S. Ct. 1264, 20 L.Ed.2d 163; NLRB v. City Yellow Cab Co., 6 Cir. 1965, 344 F.2d 575; NLRB v. Peter Cailler Kohler Swiss Chocolates Co., 2 Cir. 1942, 130 F.2d 503. But independently of any judicial precedent, we are simply unable to convince ourselves that, though an employer's future impositions be ever so ominous and foreseeable, a union's concerting is so frozen to the status quo under Section 7 that the union possesses absolutely no mobility to object. A union cannot be cast solely as a neanderthal of the past or a lamb of the present. Indeed, if it be given any role, it must be that of a lion seeking havens of betterment in the company's plant. There-fore, we conclude that under Section 7 employees have the right to ameliorate both present and future working conditions, and that Loper's conduct in the instant case falls within the protective ambit of that provision.

Turning our attention to the petitioner's procedural objections, we first consider the Company's argument that the charge and complaint in this case are barred by Section 10 of the Act. Section 10(b) provides in part "[t]hat no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made. . . ." 29 U.S.C.A. § 160(b). The original charge in this case alleged that the petitioner discriminated against Loper by refusing to employ him because of his union membership and his activities in behalf of the union. The complaint, which was filed some two and a half months after the union filed its original charge, asserts that the petitioner refused to rehire Billy Loper on August 7, 1968, because he engaged in concerted activities for the purpose of collective bargaining or mutual aid or protection. The Company contends that the failure of the Board's complaint to list in detail the concerted activities in which Loper engaged is fatal to the Board's order. It is the Company's position that it was not apprised of the details until February 20, 1969, and that this notice constituted an amendment to the complaint which was barred by Section 10(b) because it was issued more than six months subsequent to the filing of the charge. We first note that the six-months limitation of Section 10(b), by its own terms, applies to the filing of a charge and not to the issuance of a complaint. Moreover, it is settled law

---

1. Section 7 of the National Labor Relations Act provides in part:

"[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection. . . ." 29 U.S.C.A. § 157.

that particularity of pleading is not required of a complaint issued by the Board. NLRB v. Johnson, 3 Cir. 1963, 322 F.2d 216, cert. denied, 1964, 376 U. S. 951, 84 S.Ct. 968, 11 L.Ed.2d 971; Bakery Wagon Drivers & Salesmen Local Union No. 484 v. NLRB, 1963, 116 U.S.App.D.C. 87, 321 F.2d 353. Finally, even assuming *arguendo* that the complaint was not sufficiently detailed to put the petitioner on notice at the original hearing as to the precise facts at issue, the Company is in no position to claim any prejudice by any such omission since it knew of the alleged details concerning Loper's concerted activity at Red's long before they were established at the rehearing. *See* A. H. Belo Corp. v. NLRB, 5 Cir. 1969, 411 F.2d 959, cert. denied, 1970, 396 U.S. 1007, 90 S. Ct. 561, 24 L.Ed.2d 498.

■ Finally, the petitioner asserts that the Trial Examiner, who presided at both hearings, should have disqualified himself at the second hearing. This contention is obviously without merit. As the Supreme Court held in NLRB v. Donelly Garment Co., 1947, 330 U.S. 219, 236–237, 67 S.Ct. 756, 765, 91 L.Ed. 854, 867:

> "Certainly it is not the rule of judicial administration, that, statutory requirements apart, see Judicial Code, § 21, 28 U.S.C. § 25 [7 FCA title 28, § 25], a judge is disqualified from sitting in a retrial because he was reversed on earlier rulings. We find no warrant for imposing upon administrative agencies a stiffer rule, whereby examiners would be disentitled to sit because they ruled strongly against a party in the first hearing. The Board might have gone beyond the legal compulsions and ordered the new evidence to be heard before a new Examiner who could report with a mind wholly free from prior litigious embroilments. . . . In any event we are not the advisers of these agencies. And we have no right to upset their orders unless they fall afoul of legal requirements."

Having determined that the petitioner's objections to the Board's order are without merit, we conclude that the Board's cross-application to enforce its order should be granted.

Enforced.