579 F.2d 932
 99 L.R.R.M. (BNA) 2467, 84 Lab.Cas. P 10,824
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
TEMPLE-EASTEX, INCORPORATED, its Operating Divisions
Southwestern Timber Co., Inc., Temple Industries,
and Eastex Incorporated, all
Wholly-Owned Subsidiaries of
Time, Inc., Respondents.
 No. 77-2272.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 8, 1978.
 
 Elliott Moore, Deputy Associate, Gen. Counsel, Janet C. McCaa, Supervisor, Susan T. Papadopoulos, Jesse I. Etelson, Attys., Washington, D. C., for N. L. R. B.
 John B. Abercrombie, Coyt Randal Johnston, Houston, Tex., for respondents.
 Application for Enforcement of an Order of the National Labor Relations Board.
 Before WISDOM, GOLDBERG and RUBIN, Circuit Judges.
 WISDOM, Circuit Judge:
 
 
 1
 The National Relations Board seeks enforcement of its order against Temple-Eastex, Incorporated, based on the finding that Temple-Eastex violated Sections 8(a)(5) and 8(a)(1) of the National Labor Relations Act when it refused to grant a union's request for information concerning employees outside of the bargaining unit represented by the union. Because the Board based its finding on a theory never presented by the General Counsel during the proceedings before the Administrative Law Judge, and because the evidence in the record does not support the Board's judgment, we decline to enforce its order.
 
 
 2
 Temple-Eastex, Incorporated, a wholly owned subsidiary of Time, Incorporated, is engaged in the business of forestry, logging, and wood products operations. It has three operating divisions, of which only one, Temple-Eastex Forests, is involved in this case. Temple-Eastex Forests is the result of a merger between Eastex and Temple Industries.
 
 
 3
 After a consent election, the United Paperworkers Union was certified on November 27, 1974, as the exclusive representative of the employees of the Southwestern Timber division of Eastex, Incorporated. The ex-Temple employees were not included in that election. At the time, Eastex, Incorporated was an independent corporate entity, the stock of which was held by Temple-Eastex, a holding company for Temple Industries and Eastex.
 
 
 4
 On December 31, 1974, Temple Industries and Eastex merged. The merger had been anticipated in reports available to employees of both corporations as well as to the Union. The pending merger was also the subject of rumor among the employees. In addition, even before the merger, Temple Industries and Eastex had begun to consolidate some of their operations.
 
 
 5
 Because the employees of the new Temple-Eastex Forests division of Temple-Eastex who had been employees of the Southwestern Timber division of Eastex (the ex-Southwestern Timber employees) were unionized, while the Temple-Eastex Forests employees who had worked for Temple Industries (the ex-Temple employees) were not, Temple-Eastex Forests kept the two groups separated. The Company bargained with the Union after the merger with respect to the former Southwestern Timber employees. On March 10, 1975, a bargaining agreement was executed by the parties. The contractual unit is the same as described in the petition and stipulations for the Union's certification election: those employees who had worked for Southwestern Timber before the merger of Temple Industries and Eastex. Temple-Eastex continued to deal with the ex-Temple employees as non-union employees. On July 7, 1975, the Company granted an increase of twenty-five cents an hour to those employees. It did not bargain with any union before granting this increase; nor did it grant a similar wage increase to the ex-Southwestern Timber employees.
 
 
 6
 Not surprisingly, misunderstandings developed between the Union and the Company about the effect of the merger. For instance, on July 7, 1975, the Union filed a grievance alleging that the Company, instead of posting and permitting bidding on a tractor operator job within the unit according to the contract, had assigned the position to an employee who had formerly worked for Temple Industries. During an August 1975 meeting with Company officials concerning this grievance, Reeves Brunk, an International representative of the Union, inquired whether the merger of Temple and Eastex had changed the size of the unit. He testified that he needed this information because if the Temple employees were not part of the bargaining unit after the merger, the Union's complaint would be both that the Company had gone outside the unit to fill the vacancy and that the job had not been posted properly. On the other hand, if the unit had expanded after the merger to include employees formerly with Temple Industries, then, in addition to complaining about the failure of the Company to post the position, the complaint would be that seniority had not been respected. The Company's representative was not able to clarify the situation to Brunk's satisfaction. Brunk testified that he informed the Company's representative that if the Company could not clear up the matter "then we would have to file an unfair labor practice charge in order to get the information so that we could determine how to proceed on the grievance".
 
 
 7
 By October 10, 1975, the Union was no longer asking whether the Company thought that the Temple Industries and Eastex merger had expanded the unit, but was asserting that it had. On that date, Boyd Young, an International representative of the Union, wrote Kenneth Nelson, a vice-president of Temple-Eastex and the General Manager of Temple-Eastex Forests the following letter:
 
 Dear Mr. Nelson:
 
 8
 It is my understanding the recent merger between Temple Industries and Eastex Incorporated has now been finalized and is therefore official.
 
 
 9
 As you know the United Paperworkers International Union represents the woodlands employees of one of these predecessor companies, namely Eastex Incorporated. Because of the merger our union now represents all woodlands employees of Temple-Eastex Forest.
 
 
 10
 I have discovered Temple-Eastex Incorporated, a division of Time Incorporated, unilaterally gave a $.25 per hour general increase to all former Temple Woodlands employees on June 1, 1975, therefore I am requesting you make this increase retroactive to said date for all woodlands employees. Furthermore, I am by this letter requesting you furnish me with the following information for all hourly paid employees employed by Temple-Eastex Forests:
 
 
 11
 1. Names, addresses and social security numbers.
 
 
 12
 2. All current job classifications and rate of pay.
 
 
 13
 3. All fringe benefits such as holidays, vacations, pensions & insurance plans, profit and/or thrift plans, hunting privileges, sick leave, S & A benefits, transportation benefits, guaranteed hours of work and etc.
 
 
 14
 4. Dates that would be convenient for you to meet with our union and begin negotiations with respect to the merger and its affect (sic) on woodland employees and the collective bargaining agreement now in effect.
 
 
 15
 The Union believes the Company violated Section 8(a)(5) of the Federal National Labor Relations Act, by not informing and negotiating with us, the certified bargaining agent for Woodlands employees with respect to this merger.
 
 
 16
 A prompt reply is expected and your co-operation in this matter would be appreciated.
 
 
 17
 Sincerely,
 
 Boyd Young
 International Representative
 
 18
 The Company refused to supply any of the requested information. It explained that the Union in its view did not represent all woodlands employees of Temple-Eastex Forests, and therefore the requested information was not relevant to any legitimate Union needs. Following the Company's refusal, the Union filed an unfair labor practice charge. The General Counsel initiated proceedings.
 
 
 19
 The General Counsel's case revolved around the assertion that the Union represented all employees in the merged Temple-Eastex Forests division. As the case was pleaded and tried, the General Counsel contended, first, that the Company withheld and misrepresented facts with respect to the merger of Eastex, Incorporated and Temple Industries, Incorporated. This misrepresentation, so the argument ran, led the Union to seek an election in only part of the eventual bargaining unit. General Counsel argued that the unit should be expanded to include the entire Temple-Eastex Forests division to remedy this violation. The General Counsel further alleged that the Company violated Section 8(a)(5) of the Act by refusing to bargain over the merger. Second, the General Counsel contended that the Company violated Section 8(a)(5) when, unilaterally and without bargaining with the Union, it granted a wage increase to the ex-Temple employees. Because, according to the General Counsel's theory, the bargaining unit included all Temple-Eastex Forests' employees, the Company should have bargained with the Union before granting ex-Temple employees a raise. It was also illegal, the General Counsel argued, for the Company to grant a raise to ex-Temple employees without giving the same benefit to ex-Southwestern employees. Finally, the General Counsel alleged that the Company violated Section 8(a)(5) when it refused to grant the request for information in the Union's October 10, 1975, letter. The complaint did not mention the grievance filed on July 7, 1975.
 
 
 20
 The ALJ rejected all these contentions and dismissed the complaint. He found that the Company did not mislead the Union about the pending merger; on the contrary, the Union was aware that a merger was imminent. In the ALJ's opinion, the Union petitioned for the limited unit of Southwestern woodland employees because it did not have the required showing of interest among Temple employees. The ALJ's rejection of the General Counsel's allegations that the wage increase to ex-Temple employees violated the Act followed from his disagreement with the General Counsel's first point. Since the ex-Temple employees were not covered by the collective bargaining contract, the Company was not obligated to bargain with the Union concerning the wage increases to ex-Temple employees. Furthermore, the ex-Southwestern employees, who were covered by the contract, would not automatically be entitled to the same benefit.
 
 
 21
 Finally the ALJ (ALJ) analyzed the October 10, 1975 request for information in light of his conclusion that the Union represented only the ex-Southwestern Timber employees. He found that the requested information had no probable or potential relevance to the Union's representation of employees in the certified bargaining unit. Nor did he find any evidence in the record to show that the Union needed the information to police its current bargaining contract or to prevent erosion of unit work.
 
 
 22
 The General Counsel took exceptions to the Board. A three-member panel of the Board affirmed the ALJ for the most part. It held, however, that the information requested in the October 10, 1975, letter was relevant to the grievance filed July 7, 1975. The Board did not specifically find that the information had been requested for the purpose of processing the grievance. Because the Board considered the information relevant to the grievance, it ruled that the Company violated Sections 8(a)(5) and (1) of the Act when it refused to furnish the requested information. The Board's order requires the Company to cease and desist from the unfair labor practice found and similar practices, and not to restrain or coerce employees in the exercise of their rights under the Act. Affirmatively, the Board's order requires the Company, upon request, to bargain with the Union by furnishing the information requested in the October 10 letter, and to post the customary notices.
 
 
 23
 Temple-Eastex objects in this Court to the Board's use of a totally new theory to find a violation not argued to the ALJ and, of course, not found by the ALJ. In its brief opposing the General Counsel's exceptions to the ALJ's order, the Company also protested to the Board the General Counsel's argument that the grievance be used to find an 8(a)(5) violation. Although the Company made its objection less vigorously to the Board than to this Court, its brief to the Board sufficiently alerted the Board that the General Counsel was relying upon a theory not presented at any prior time in the unfair labor practice proceeding. The General Counsel argues that it was obvious from the presentation of the case that the grievance was an important part of the request for information. Indeed, in his brief the General Counsel contends that the hearing attorneys from his office explicitly made the contractual dispute a basis for the Union's continuing request for the information.
 
 
 24
 The record of the proceedings before the ALJ shows that the July 7 grievance did not play a central role in the General Counsel's case. The ALJ did not understand the General Counsel's theory to be that the July 7 grievance was related to the October 10 information request. Instead, the ALJ pointed out that: "The General Counsel readily agrees that Any violation of Section 8(a) (5) must be predicated on a finding that the overall unit of Respondent's combined woodlands operations, Temple-Eastex Forests, is the appropriate bargaining unit rather than the present contractual unit." The ALJ and the Board both concluded that the unit including only former Southwestern employees was the appropriate one. As the ALJ understood the case, this meant there were no Section 8(a)(5) and (1) violations. Nothing in the record contradicts Temple-Eastex's assertion that it shared the ALJ's view of the General Counsel's theories.
 
 
 25
 Our understanding of the General Counsel's case, based upon a review of the record, matches that of the ALJ and Temple-Eastex.
 
 
 26
 Evidence about the grievance was presented in the proceedings before the ALJ. In context, however, it is clear that the purpose of this evidence was to support the General Counsel's primary theory that the bargaining unit should be expanded to include all employees of the merged Temple-Eastex Forests by showing that Temple-Eastex treated employees who had been with Temple Industries and employees who had been with Southwestern Timber interchangeably. The specific question whether the information requested on October 10 was relevant to the July 7 grievance was not raised in the complaint or orally at the hearing, nor was it litigated in the proceedings before the ALJ.
 
 
 27
 We agree with Temple-Eastex that the Board should not have issued an order based solely upon the General Counsel's new theory. Due process requires that the Board base its findings against a party only upon matters brought to the party's attention in the complaint or during the administrative hearing, and that are fully litigated. See, e. g., Bob's Casing Crews, Inc. v. NLRB, 5 Cir. 1970, 429 F.2d 261, 263; General Teamsters and Allied Workers, Local 992 v. NLRB, 1970, 138 U.S.App.D.C. 312, 427 F.2d 582, 588; J. C. Penney Co. v. NLRB, 10 Cir. 1967, 384 F.2d 479, 483; Metal Processors' Union, Local 16 v. NLRB, 1964, 119 U.S.App.D.C. 78, 337 F.2d 114; NLRB v. Johnson, 6 Cir. 1963, 322 F.2d 216, 231 NLRB No. 180; International Offset Corp., 1974, 210 NLRB 854.
 
 
 28
 Apart from requirements of due process, the General Counsel's failure to litigate an issue crucial to the Board's decision makes it impossible to determine whether the Board's findings are supported by substantial evidence, as the law requires. See, e. g., Universal Camera Corp. v. NLRB, 1950, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. Without any warning from the October 10 letter itself or from the General Counsel's complaint or conduct in the proceedings before the ALJ, the Company had no reason to, and did not, present any evidence going to the relevancy of the requested information to the outstanding grievance. The record is thus incomplete on this point and does not provide a satisfactory basis for the Board to find a violation of the National Labor Relations Act. See, Bob's Casing Crews, Inc. v. NLRB, 429 F.2d at 264.
 
 
 29
 Finally, assuming Arguendo that Temple-Eastex had proper notice of the Union's claim that its October 10 information request was relevant to its July 7 grievance,[1] the incomplete record before us still does not substantiate the Board's finding of relevance. The record as a whole, however, does not substantiate the Board's conclusion that the information is relevant to the July 7 grievance. The Board quoted testimony showing that the Union had to choose between two approaches to the grievance: one if the unit had been expanded by the merger, another if it had not. The information it needed was the effect of the merger on the unit. The data requested in the October 10 letter would not have supplied that information. Even if the Union had explicitly asked the Company for its position on the effect of the merger on the unit, it is unlikely that the Union would have accepted the Company's position as determinative. The October 10 letter shows that the Union had independently concluded that the effect of the merger was to constitute the Union as the representative of all employees of Temple-Eastex Forests. The Union could learn the effect of the merger on the unit only by obtaining a ruling from the National Labor Relations Board.
 
 
 30
 As part of this proceeding, the Board has ruled that the merger did not expand the unit. Because of this ruling, an 8(a)(5) violation based upon Temple-Eastex's failure to respond to the October 10 request for information can be upheld only if the information is relevant to a grievance based on an allegation that Temple-Eastex did not post a particular position and awarded the position to someone outside the unit. This is the approach to the grievance that the Union representative testified he would follow if the unit had not been expanded.
 
 
 31
 The standard of relevancy that justifies a unit's request for information is the standard for discovery. See, e. g., NLRB v. Acme Industrial Corp., 1967, 385 U.S. 432, 437 n. 6, 87 S.Ct. 565, 17 L.Ed.2d 495. This is not a demanding standard, but it is not a non-existent one either. We cannot see any relation between the information requested in the October 10 letter and the July 7 grievance, for the merger did not expand the unit. If the Union knew the names of the unit members it could determine whether a non-unit employee had been awarded the job. The Union presumably already knew the names of its own unit members. If it did not, it could have asked for that limited information rather than for detailed data about all Temple-Eastex Forests employees, many of whom had no connection with the Union. Significantly, the October 10 request did not even ask Temple-Eastex to distinguish between ex-Temple and ex-Southwestern Timber employees. Even if the Company had responded, therefore, its response would not have helped the Union determine whether a non-unit member had received a unit job.
 
 
 32
 For the foregoing reasons, enforcement of the Board's order is DENIED.
 
 
 
 [1]
 The validity of this assumption is questionable. The Union must affirmatively show the relevancy of a request for information to a legitimate Union concern. See, e. g., United Furniture Workers of America v. NLRB, 4 Cir. 1967, 388 F.2d 880; Curtiss-Wright Corp. v. NLRB, 3 Cir. 1965, 347 F.2d 61. In almost every case, such a showing requires the union to identify the matter to which the requested information is pertinent. See Rodney and Judith Adams, 1974, 219 NLRB 211
 In this case, the Union specified that it wanted the information so it could represent all the Temple-Eastex Forest employees. The Board relied upon a different purpose to support its finding that the Company should have provided the requested information. Thus, the Board would impose a duty upon employers to review all outstanding labor matters whenever a union requests information even if the union specifies a purpose for the request. Only if the Company discovers that the information is not relevant to any outstanding labor matter may it refuse the request. The duty to review all outstanding labor matters could be a burdensome one for an employer, particularly if there are numerous pending grievances. The Union, on the other hand, presumably knows exactly why it wants information, and could specify that reason without difficulty. It appears, therefore, more appropriate to both require the Union to specify the purpose of its request and to evaluate an employer's refusal to provide information on the basis of the relevancy of the request to the specified purpose only.